## Taylor's Estate.   Ruffell's Appeal.

154  183
f39SC²252

*Evidence—Competency of witness—Party dead—Payee of check.*

The payee of a check is a competent witness to prove that the check was drawn in the maker's lifetime in order to enable the payee to collect the money and pay it over to another person to whom the maker intended to present the money as a gift.

*Gift—Equitable assignment—Check.*

Where a check is drawn for the whole amount of a deposit in bank, and the drawer intends, by means of the check, to make a gift to another of the whole fund, the check will operate as an equitable assignment of the fund.

Argued Jan. 24, 1893.   Appeal, No. 50, Jan. T., 1893, by C. Wesley Ruffell, administrator d. b. n. of Samuel S. Taylor, deceased, from decree of O. C. Phila. Co., Jan. T., 1892, No. 402, dismissing exceptions to adjudication.   Before PAXSON, C. J., STERRETT, GREEN, MCCOLLUM, MITCHELL and DEAN, JJ.

Audit of account of Theresa J. Taylor, administratrix of Samuel S. Taylor, deceased.

The facts were found as follows, by the auditing judge, ASHMAN, J.:

"Samuel S. Taylor died intestate May 20, 1890, unmarried and without issue. His sole surviving next of kin is one sister, Louisa Rabe, who is of full age. Letters of administration to

his estate were issued to Theresa J. Taylor, his stepmother. She died on or about November 14, 1890, and thereupon letters of administration de bonis non to the decedent's estate were granted to C. Wesley Ruffell.

"The present account is of the sum of $650, which was on deposit in bank in the name of decedent at the time of his death. The balance thereof amounts to $372.20 and constitutes the fund for distribution. This balance was claimed on the one hand by the administrator d. b. n. as the custodian of the decedent's estate; and on the other by the administrator of the estate of the deceased accountant. . . .

"The proof was that the decedent shortly before he died sent for a Mr. Hubbert, in order that he might fix up the decedent's affairs. He said that he wanted to give to his stepmother $650, which he had in bank. Mr. Hubbert drew up or caused to be drawn up a check on decedent's bank for that amount, and the decedent signed the check by his mark. One check was drawn to the order of Hubbert, and he in turn gave his duebill in the same sum to the stepmother as a receipt. When he presented the check at the bank payment was refused because the decedent's mark was not attested by subscribing witness. The presentation seems to have been made before the decedent died; after his death the bank officers suggested that an administrator should be appointed. Mr. Hubbert gave the check to the stepmother and received back his duebill. He was, of course, a competent witness to prove these facts. The check was drawn to his order simply to enable him to secure its payment, and he had no beneficial interest in the claim. Whether he was competent or not his evidence both as to the declaration of the decedent and the making of the check was corroborated by the testimony of other and disinterested witnesses. To state the evidence more at large, Mr. Nichols testified that he saw the decedent the night before he died and told him he thought he should settle his matters up. The decedent replied that he would like to have Mr. Hubbert settle everything up, and that he wanted Mrs. Theresa Taylor to have everything. Mr. Hubbert testified that he was sent for and was present just before the decedent died and was told by the decedent that he wanted Mr. Hubbert to fix up his matters for him; that he wanted to give his stepmother $650 which he

had in bank; that he wanted her to have it. The witness added: 'Mr. Taylor was very sick. I suppose he was in condition to do business from the way he talked. I made the proposition to him to give the check so that there should be no delay. He said he wanted something drawn up so that his stepmother could have the money. I could just about hear him speak, that was about all. I had to support him while he put his hand to the mark.' The auditing judge, after some reflection, thinks that the gift may be upheld as a gift inter vivos. It is true that a check is not ordinarily an appropriation of the fund upon which it is drawn; and that it is rather an order upon the banker to pay, which like any other order may be revoked at the will of the maker as it will be revoked by his death. The presentation having in this case been made before the death and payment having been refused, the holder may perhaps have an action for damages against the bank, but that would be no criterion of her right to claim against the estate (Jordan's Ap., 10 W. N. 37; Kuhn v. Bank, 20 W. N. 230); but this and kindred cases are separated from the present case by a very clearly defined distinction. The decedent's check was not drawn upon a general fund nor meant to withdraw therefrom a sum of money which was not earmarked; on the contrary it covered the whole fund, and was meant as a specific transfer of that fund. The testator's language was that 'He wanted to give his stepmother $650 which he had in bank;' and the check was suggested to him as the readiest instrument by which the gift could be effected. It is impossible to doubt, from what he said and did, that he intended to assign his title to the fund, then and there; and there is little room to doubt that if he had made a formal assignment, his interest would have passed. But the delivery of the check worked the same result, because it had the same purpose. 'Whenever the party has the power to do a thing (statutory provisions being out of the way) and means to do it, the instrument he employs shall be so construed as to give effect to his intention: Bond v. Bunting, 28 P. F. Sm. 210. The distinction has been recognized in a number of cases. In Clemson v. Davison, 5 Bin. 398, C. J. TILGHMAN said: 'Any order, writing or act which makes an appropriation of a fund, amounts to an equitable assignment of that fund.' In Greenfield's Estate, 12 Har. 232, an order to pay was

held not to be an assignment, because it was drawn generally upon trustees without specifying the fund, whether principal or interest, from which it was to be paid.   In Loyd v. McCaffrey, 10 Wr. 410, a check was held invalid for the same reason. In Bank v. Gish, 22 P. F. Sm. 13, however, a check was undoubtedly held to be an appropriation.   There a note for $6,000 was discounted with the understanding that $1,000 was to be retained by the discounting bank out of the loan.   In pursuance thereof a check for $1,000 was drawn on the bank by the maker of the note and was retained by the bank.   The check was held to be part of the original transaction and to have reduced the loan to $5,000.   Hemphill v. Yerkes, 17 Crum. 545, is nearer the point under discussion.   'It is true,' says PAXSON, C. J., 'as a general principle, that a check drawn in the ordinary form vests no title to the general funds of the drawer in the bank upon which it is drawn. . . . The check (in dispute) was not drawn against the general fund of Monaghan (the maker); it was drawn against the whole of a specific fund which in equity belonged to the payee, and, as before observed, passed the legal title to the fund even as against the drawer.'   In that case the check was drawn by a master, who was the custodian of the money, in favor of a distributee who had been awarded a share in the fund, and in this case a check was drawn by the owner of the fund.   But in all other respects the cases are parallel. By the delivery of the check, with words of absolute and present gift, the donor parted with the specific money in bank and vested the title thereto in the donee as irrevocably as he could possibly have done by an assignment formally executed and delivered.   If the proof of irrevocability is not sufficient to make this a good gift inter vivos, it will at least sustain it as a valid gift causa mortis."

The auditing judge awarded the fund to Charles M. Williamson, administrator of Theresa J. Taylor, deceased.   Exceptions to the adjudication, (2) in awarding fund as above, and (3) in not awarding it to appellant, were dismissed by the court.

*Errors assigned* were, (1) in admitting the testimony of George W. Hubbert; (2, 3) in dismissing exceptions.

*J. Willis Martin*, for appellant, cited:  McBride's Ap., 72

Pa. 480; Braman's Ap., 89 Pa. 78; Winton's Ap., 111 Pa. 387; Hopkins v. Beebe, 26 Pa. 85; Loyd v. McCaffrey, 46 Pa. 410; Waynesburg College Ap., 111 Pa. 130; Walsh's Ap., 122 Pa. 177.

*A. M. Burton,* for appellee, cited: Marshall v. Hoff, 1 Watts, 440; High's Est., 136 Pa. 236; McDermont's Ap., 106 Pa. 358; Gaffney's Est., 146 Pa. 49; Hemphill v. Yerkes, 132 Pa. 545; Bromley v. Brunton, L. R. 6 Eq. 275; Rhodes v. Childs, 64 Pa. 18; Com. v. Crompton, 137 Pa. 147; Basket v. Hassell, 107 U. S. 602; Crawford's Ap., 61 Pa. 52; Helfenstein's Est., 77 Pa. 328; Dickerson's Ap., 115 Pa. 198; Lines v. Lines, 142 Pa. 149; Kekewich v. Manning, 1 De G. M. & G. 176; Clemson v. Davidson, 5 Bin. 398; Nesmith v. Drum, 8 W. & S. 9.

PER CURIAM, February 6, 1893:

We think the testimony of the witness, George W. Hubbert, was properly admitted. He had no interest in the matter in controversy. He was not a party in any sense of the term. He was at most a mere conduit through which the sum in controversy was to pass to Mrs. Taylor.

Nor do we think it was error to award the fund to the administrator of Mrs. Taylor. The check was drawn upon the bank for the full amount on deposit, under circumstances which showed that it was intended as an assignment of the fund. It did not come within the principle of that class of cases which holds that a check drawn in the ordinary form vests no title to the general funds of the drawer in the bank upon which it is drawn. It more nearly resembles Hemphill v. Yerkes, 132 Pa. 545.

Judgment affirmed.