# DeWitt *v.* DeWitt, Appellant.

*Dower—Substitution of property—Account of rents.*

A widow in her bill for an account of the rents, issues and profits of the real estate of her deceased husband, and for the assignment of her dower, has a right to include property of which her husband had not died seized, but which had been conveyed to his estate years after his death in consideration of " other property deeded " to the grantors.

*Principal and agent—Estoppel—Widow—Decedent's estates.*

Where a widow permits her son as her agent to collect rents, issues and profits accruing to her from her husband's estate, she cannot repudiate her son's agency after his death, and after she discovers that he has squandered or misappropriated what he had collected.

*Appeals—Auditor's findings of fact.*

On a bill by a widow for an account of rents, a failure of the master and court below to find as a fact the only thing that could have been found from the admissions of the widow, will be corrected by the appellate court.

Argued Feb. 25, 1902. Appeal, No. 316, Jan. T., 1901, by defendant, from decree of C. P. Wyoming Co., on bill in equity in case of Celestia DeWitt v. Ettie M. DeWitt, Widow of F. W. DeWitt, Deceased, Decker DeWitt, Clinton DeWitt, Melissa DeWitt and Perry S. Billings. Before McCollum, C. J., Mitchell, Dean, Brown and Mestrezat, JJ. Reversed.

Bill in equity for an account and assignment of dower.

The case was referred to E. J. Jorden, Esq., as master, who reported in favor of the plaintiff.

Exceptions to the master's report were dismissed, and a decree was entered in favor of the plaintiff.

*Errors assigned* were in dismissing exceptions to the master's report.

*C. O. Dersheimer*, for appellant.—The widow's right, her "statutory share" in lands, sometimes called statutory dower, attaches only to lands of which her husband died seized: Act of April 8, 1833, P. L. 315, sec. 15; Gray v. McCune, 23 Pa. 447; Riddlesberger v. Mentzer, 7 Watts, 141; Leinaweaver v. Stoever, 1 W. & S. 160; Gourley v. Kinley, 66 Pa. 270; Benner v. Evans, 3 P. & W. 454.

The widow of D. D. DeWitt elected to take the annual rents, issues and profits from these lands, collected by herself in part, and the balance by her son, F. W. DeWitt, as her agent, in lieu of having her share set out under the statutory proceedings.

The auditor's finding of fact based upon insufficient evidence will be reversed on appeal: Fehl's Est., 13 Pa. Superior Ct. 601.

The widow cannot collect the rents herself or by her agent, and still have damages for detention of dower, from the same lands, any more than she can collect damages for detention of dower from lands occupied by her as widow: 1 Cord on Legal and Equitable Rights of Married Women, sec. 544; Paul v. Paul, 36 Pa. 270.

A widow may estop herself from right to claim dower by her positive acts: Cunningham's Estate, 137 Pa. 621; Share v. Anderson, 7 S. & R. 43; Zeigler's Appeal, 1 Chester County Rep. 515; Evans v. Evans, 1 Phila. 113.

In equity an account will only be decreed for the time the premises were in the actual occupation of the heir or feoffee: Sandback v. Quigley, 8 Watts, 460, 464.

*James E. Frear*, for appellee.—A joint owner can demand in equity an accounting from the other owners for profits under Statute 4 Anne: Frisbee's Appeal, 88 Pa. 144; Enterprise Oil & Gas Co. v. National Transit Co., 172 Pa. 421.

This additional remedy of the widow as joint owner explains the cases of Sandback v. Quigley, 8 Watts, 460, and Zeigler's Appeal, 1 Chester Co. Reps. 515.

The action of the widow for her dower rights is de terris. The tenant or owner at the time of suing out the writ is liable for the rents received by the owners before him: Brewster's C. P. Practice, sec. 1097; Seaton v. Jamison, 7 Watts, 533; Heller's Appeal, 116 Pa. 534.

Mere forbearance or laches will not deprive the widow of her right to an account for rents and profits : Worthington v. Worthington, 9 Kulp, 513 ; Karstein v. Bauer, 4 Penny. 366 ; Heller's App., 116 Pa. 534.

Even if the widow did not sign the deed given in exchange, she can elect which land she will claim her dower from : 4 Kent's Com. 59.

OPINION BY MR. JUSTICE BROWN, April 21, 1902 :

In her bill for an account of the rents, issues and profits of the real estate of her deceased husband, and for the assignment of her dower, the appellee included an undivided sixth in what was known as the Putnam street property, of which he had not died seized, but which was conveyed to his estate on June 19, 1890, more than ten years after his death. The consideration was $1.00 and " other property deeded " to the grantors, and it passed to them from the decedent's estate. The master was of opinion that the presumption was that the " other property deeded " in exchange for this one-sixth interest was land of which the husband had died seized, and that neither F. W. De-Witt, the son of the decedent, nor the estate of Perry S. Billings, his successor in title, could be heard to question the right of the widow to demand her dower in it after it had been so taken in exchange for land of which she had been dowable. This conclusion of the master, sustained by the court, was based upon the analogy of the common-law rule, that, if the husband seized of an estate of inheritance, exchanged it for other lands, the wife should not have the dower of both estates, but should be put to her election : Co. Litt, 31 b. ; 2 Bl. Com, 129 ; 4 Kent, 59 ; 2 Kerr on Real Property, 797. With us, as long ago as Kelly v. Mahan, 2 Yeates, 515, it was held that dower lay for lands held by improvement right alone, the court saying, " We have gone too far into the improvement doctrine, to exclude a widow from her claim of dower of lands, held under such equitable, though imperfect title, so frequently recognized by the laws and usage of this state ; " and in Pritts v. Ritchey, 29 Pa. 71, it was held that an equitable title was equivalent to a legal seisen. The finding that the appellee was dowable of this sixth interest was correct, and, but for error in directing that she was entitled to an account of the rents, issues and prof-

its from the death of her husband, committed in view of a fact which ought to have been found, the decree appealed from would not be disturbed.

Counsel for the appellant, W. P. Billings, administrator of the estate of P. S. Billings, deceased, asked for a finding of the fact that, from the death of D. D. DeWitt, on February 19, 1880, to the death of F. W. DeWitt, his son, on June 12, 1899, the widow had allowed and trusted the son, as her agent, to collect the rents, issues and profits of the real estate; and, having assumed that the finding of fact would be as requested, the master was asked to conclude, as a matter of law, that, the widow having elected to take her share of the rents, issues and profits accruing from the death of D. D. DeWitt to the death of F. W. DeWitt, the son and heir, who had collected the same as her agent, she is not now entitled to an account of them during that period. If the fact should have been found as requested, the legal conclusion asked for would inevitably have followed; for it would be most inequitable to compel the purchaser of the real estate of D. D. DeWitt, deceased, to pay his widow the rents, issues and profits for twenty years, after she had allowed her son, as her agent, to collect them during that period and undertook to repudiate his agency only after he had died and she discovered that he had squandered or misappropriated what he had collected. The widow herself was the witness upon this question of the agency of her son, and but one inference can be drawn from what she says. Her testimony was as follows: "Q. You permitted your son, F. W. DeWitt, to collect all the rents and take all the purchase money and all the issues and profits from the real estate that your husband owned at his death, in 1880, up to the time of the death of F. W. DeWitt, in 1899? A. I permitted him to because he was administrator and done the business. He didn't ask me whether he could do it or not. I permitted him to go on and do it. I didn't make any demand on him to pay them over, but I expected him to. I expected him to pay my share some time. . . . Q. If Frank DeWitt had not died, it was not your intention, was it, to demand any part of the rents, issues and profits out of these lands in controversy from F. W. DeWitt? A. I expected, if he lived, to have something left for me. I allowed him to collect these rents, issues and profits because he was doing the business, be-

cause he was administrator of the estate. Q. He was collecting the rents as your agent, was he? A. I suppose that was what it would be, wouldn't it, Mr. Frear? I didn't make him pay my share, I suppose, because I was too easy with him." She further testified: "I didn't object to his taking the rents, issues and profits, and purchase money, because he did the business, and I supposed he would do what was right. He was administrator."

There is nothing doubtful in what the widow says about the son's collection of the rents and profits ; and, if the only conclusion that could be drawn from her testimony was not drawn in the court below, we must draw it here. It is not the case of a finding on disputed facts, or involving the credibility of witnesses, which will not be disturbed except for clear error committed; but it is a manifest failure to find the only thing that could have been found from the admissions of the widow. True, she may not have formally, nor by any writing, constituted her son her agent; but she so regarded him and allowed him to so act for her in the collection of the rents and income from her husband's estate. It is, then, our duty to correct the reasoning and conclusion of the master and court below on the appellee's admissions : Phillips's Appeal, 68 Pa. 130 ; Sproull's Appeal, 71 Pa. 137 ; McConomy v. Reed, 152 Pa. 42. The master's second finding of fact, confirmed by the court, is reversed, and the finding now is, that, between the death of D. D. DeWitt, February 19, 1880, and June 12, 1899, F. W. DeWitt, as the son and agent of the appellee, collected the rents, issues and profits arising from the real estate of the deceased. The fifth, sixth and tenth assignments are sustained. The twelfth assignment is sustained to the extent of directing that the appellee pay all the costs in the accounting branch of the case and one third of the costs in the partition branch.

The decree is reversed and the record remitted, that the errors in the account stated may be corrected in accordance with the views expressed in this opinion, the costs on this appeal to be paid by the appellee.