Baldwin, to use, *v.* Loesel, Appellant.

Argued December 2, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Harold F. Mook,* with him *Robert L. Roberts,* for appellant.

*T. P. Dunn,* for appellee.

OPINION BY MR. JUSTICE MAXEY, January 9, 1939:

This cause arises on a petition to open judgment entered on a scire facias sur mortgage. By agreement of counsel, if the judgment was opened, the court was to try the issues involved without a jury.

The trial judge found, inter alia, the following facts: "G. Daniel Baldwin and Isaac W. Baldwin are partners in the development and leasing of real estate, the construction of buildings and improvements thereon and the sale thereof. . . . G. Daniel Baldwin, since Dec. 14, 1911, has had a recorded letter of attorney empowering him to sell real estate and to sell and assign mortgages owned by Isaac W. Baldwin. . . . Until February 20, 1931, the land involved in this proceeding was owned by Isaac. On that date Isaac Baldwin by G. Daniel Baldwin, his attorney-in-fact, conveyed the land to defendant, Mary C. Loesel; the consideration named in the deed being nominal. The value of the land was about $6,500. It was the intention of G. Daniel Baldwin to convey the land to the defendant as a gift, but that the transaction might have the color of a sale, defendant, at Daniel's request, gave back a bond and a mortgage on the land, for $6,500." The court below said as to this: "Some skill was displayed in selecting the method of consummating this gift—a method which gave the donor the power of inspiring a revocation on change of mood." The trial judge also found that "both the deed and the

28

mortgage are recorded. On July 14, 1932, G. Daniel Baldwin delivered this bond and mortgage to defendant after having endorsed on each of them an assignment in blank, executed by him as attorney-in-fact for Isaac. He also delivered to her an assignment piece in blank, similarly executed and duly acknowledged, it being the intention that at any time in the future defendant might fill in the name of a straw man on the assignment piece, record it and have the nominal assignee enter satisfaction on the record. This, however, was never done. On November 18, 1935, Isaac assigned the mortgage on the record .(though the original bond and mortgage with the blank assignment were then in possession of the defendant) to his son, James D. Baldwin. Possession of the land at all times since February 20, 1931, has been in defendant; she has collected all rents and has paid all taxes. On November 20, 1936, Isaac W. Baldwin, to the use of James D. Baldwin, issued a scire facias on the mortgage and took judgment thereon on December 17, 1936, for want of appearance and affidavit of defense." The judgment was for $6,500 principal, $325 collection fee, and $2,270.50 interest from the date of the mortgage. Defendant filed exceptions to the trial judge's findings that "the title to all real estate is in the name of one or the other of the partners individually and is not partnership property" and that "this letter of attorney [from Isaac to G. Daniel Baldwin] does not include the power to convey land nor to assign mortgages as gifts." The court below held, inter alia: "Defendant, under the facts, is entitled to have the judgment opened and we so hold, but on the issue raising the question of the validity of the mortgage and the right of the record assignee to proceed thereon, we must find in favor of the plaintiff. . . . The power given G. Daniel Baldwin was to sell and assign mortgages standing in the name of Isaac W. Baldwin, and the authority vested in him does not include .the power to assign as a gift." The trial judge concluded as a matter of law that the letter of attorney

did not give G. Daniel Baldwin authority to assign a mortgage and bond owned by Isaac, except upon good and valuable consideration, that G. Daniel was without authority from Isaac to assign the mortgage to defendant as a gift and the assignment was never ratified; that Isaac is not estopped from contesting the validity of the assignment; that the assignment of the mortgage by Isaac to James D. Baldwin vests title to the mortgage in the latter as against defendant; and that judgment should be entered in favor of plaintiffs and against defendant on the scire facias. A decree nisi was accordingly entered.

Defendant filed exceptions to the court's findings of fact and conclusions of law and its refusal to find certain facts as requested. The court in banc then sustained some of these latter exceptions and then found as additional facts that defendant held uninterrupted possession of the premises from February 20, 1931, until December, 1936, that neither Isaac nor any other person did at any time until the levari facias ask or request defendant to account to any person for rents which she had received from the premises, and that, during the time the premises were in defendant's possession, Isaac never made any effort whatsoever to collect interest from defendant on the $6,500 mortgage. The court in banc ordered the reëntry of judgment and defendant appealed.

The court below correctly held that "the transaction at the time of the delivery of the deed by the attorney-in-fact, since a mortgage was taken back from the grantee, had the form of a sale and may be regarded as such in law as a valid exercise of the power of sale by the attorney-in-fact, for the giving of the mortgage may be regarded as consideration for the deed." It followed that since G. Daniel Baldwin had no power to assign mortgages *as a gift,* the assignment by him on July 14, 1932, to Mary C. Loesel, the defendant-appellant, of the bond and mortgage, as a gift, was a nullity. The court therefore properly decided that judgment must be reëntered

on the sci. fa. and that the defendant cannot prevent a sale of the land on foreclosure proceedings on the mortgage in question.

There are two questions in this case, the answers to which control the decision. The first question is: Does a general power of attorney authorizing an agent to sell and convey property, authorize him to make a gift of the property? There is but one answer to this question and that is "No." The authorities are unanimous as to this. In 21 R. C. L., page 886, sec. 58, appears this statement: "A power to sell does not authorize a gift of the property or the transfer of it for any purpose, other than in completion of a sale." To the same effect are our decisions in *Lewis v. Lewis*, 203 Pa. 194, 52 A. 203, and *Wilson v. Wilson-Rogers*, 181 Pa. 80, 37 A. 117.

The second question is: Is Isaac W. Baldwin estopped from denying that he ratified the acts of the attorney-in-fact in conveying the real estate and in later executing and delivering assignments in blank of the grantee's bond and mortgage? The court below answered this question also in the negative, and in this answer we can find no error. There is no evidence that Isaac W. Baldwin knew of the alleged gift; he had in his possession the bond and the purchase-money mortgage, and therefore had no reason to believe that the transaction was other than a sale for a valuable consideration. The appellant says: "We must conclude that Isaac W. Baldwin did in fact know all about the transaction, any bookkeeping or accounting there may have been between them was satisfactorily adjusted, and in his own heart and mind Isaac W. Baldwin ratified whatever his brother G. Daniel Baldwin had done." It is obvious that this statement is a mere conjecture and is not based on proof. The only "evidence" appellant cites in support of the conclusion it wishes adopted is that Isaac "never made return or paid personal property tax on it" (the mortgage). Failure to make such a return would not be conclusive proof that he ratified the act of his

attorney-in-fact in giving away his property nor would it estop him from denying his ratification of that act. He testified that the paying of taxes was "done through our office" and that it was "attended to by clerks in the office." Isaac, on cross-examination by defendant's counsel, was asked the following questions and made the following answers: "Q. How many times since 1911 have you had to deny that George had authority to do what he did do? A. Well, but he never tried to give away houses. He sold them and transferred the mortgage and satisfied judgments and all things of that kind, but he didn't give away houses. Q. This is the only time he tried it? A. This is the only time,—if he told me he did give my house to Mary Loesel we would have been in a fight in about a minute." The court below was warranted in saying: "We are unable also to find sufficient testimony either of ratification of the acts of G. Daniel Baldwin by Isaac W. Baldwin or to estop him from denying the validity of his attorney's act."

No one disputes the rule stated in *Bredin v. Dubarry*, 14 S. & R. 27, that "a principal who neglects promptly to disavow an act of his agent by which the latter has transcended his authority, makes the act his own; he is bound to disavow it the first moment the fact comes to his knowledge." The point here is *when* did "the fact" come to the principal's knowledge? There is no specific finding on this but the implication of fact is obvious in the court's "conclusions" that the assignment "was never ratified" and Isaac W. Baldwin "is not estopped from contesting the validity of the assignment." In *Auge v. Darlington*, 185 Pa. 111, 39 A. 845, cited by appellant, the principal was found to have been advised of the unauthorized act of her "confidential agent" in July, 1891, and she took no legal action to repudiate the act until September, 1895.

The case of *DeWitt v. DeWitt*, 202 Pa. 255, 51 A. 987, is cited by appellant as being "especially applicable to our facts." There a mother had for 19 years "trusted

her son, as her agent, to collect the rents, issues and profits of the real estate" of her deceased husband and it was held that she could not after her son's death and after discovering his misappropriation of the rents he had collected, repudiate his agency. This court declared that only one thing "could have been found from the admissions of the widow" and that was that the son was "her agent in the collection of the rents and income from her husband's estate." In the instant case, there was no dispute as to G. Daniel Baldwin's "agency." The question is: Did his principal know that he had in a certain transaction acted beyond the scope of his agency? There were a large number* of transactions handled by the agent for his principal, since 1911, and the burden was upon the defendant, who relied on the principal's ratification by acquiescence of his agent's unauthorized act to prove that the principal had knowledge of the act during the period of his alleged acquiescence. This burden the court below found the defendant failed to meet. We find in this record nothing which justifies us in holding that the court erred.

The judgment is affirmed.

---

* Isaac W. Baldwin was asked on cross-examination: "How many pieces of your property has George conveyed pursuant to powers of attorney that you have given him?" He replied: "Quite a number; I wouldn't be able to say." Q. "A thousand? A. I wouldn't say that many, but I couldn't tell you because I don't know—not a thousand, quite a considerable number. Q. Do you personally investigate and check up after he has conveyed your property under that power of attorney? A. I do when the thing is finished; when I get the money finally. . . . Q. About the time he deeded it you knew he had deeded it to her? A. I knew he sold it to her, yes, and took back a mortgage. Q. What happened to that mortgage when it was taken back, did you have the original bond and mortgage? A. No I didn't. That was taken care of in our office. Q. Who took care of it? A. The office help."