**BAILIS et al. v. RECONSTRUCTION FINANCE CORPORATION.**

No. 7809.

Circuit Court of Appeals, Third Circuit.

Argued March 4, 1942.

Decided June 16, 1942.

Victor H. Blanc, of Philadelphia, Pa. (Fred L. Rosenbloom and Isador Pepp,

both of Philadelphia, Pa., on the brief), for appellants.

Sol A. Liebman, of New York City (Samuel L. Sperling, of Philadelphia, Pa., and Effingham Evarts and George Kirk, III, both of New York City, on the brief), for appellee.

Before CLARK, JONES, and THOMPSON, Circuit Judges.

JONES, Circuit Judge.

The plaintiffs seek to recover damages for the defendant's alleged breach of contract or, failing their ability to prove the contract, then on the ground of a quasi-contract because of the defendant's alleged receipt and retention of the avails of the plaintiffs' undertaking. The court below, to which the case was tried without a jury, found for the defendant and entered judgment accordingly. From the findings made by the learned trial judge, which are fully supported by the evidence, we summarize the following facts material to the questions raised by the plaintiffs' appeal:

In 1936 C. K. Eagle & Company, Inc. (hereinafter referred to as "Eagle"), owned various parcels of real estate and manufacturing plants throughout Pennsylvania, one of such parcels of land and manufacturing plants being located in Phoenixville. The Reconstruction Finance Corporation (hereinafter referred to as "RFC") was then the owner and holder of two mortgages by Eagle of its real estate, plants, machinery and equipment, securing payment of principal debts in the aggregate amount of $750,000. As to Eagle's Phoenixville property and plant, these mortgages were junior in lien to a $10,000 mortgage held by the National Dime Bank of Shamokin, Pennsylvania.

In April 1936 Eagle was in default under its mortgages to RFC both as to interest and required amortization payments; and at least some of its plants were lying idle. With a view to liquidating its past due mortgage liabilities, Eagle proposed to RFC that it be permitted to sell certain of its unused machinery and equipment in the idle plants, including the Phoenixville plant, RFC to release such machinery and equipment from the liens of the mortgages and to receive the proceeds of the sale for application to Eagle's mortgage account. RFC assented to the proposal by resolution adopted April 27, 1936. The resolution further authorized RFC's New York loan agency to release the intended machinery and equipment from the liens of the mortgages upon Eagle's compliance with certain terms and conditions specified in the resolution. Eagle employed one Edward M-P. Murphy to effect a sale of the machinery and equipment. For that purpose, Murphy prepared a catalogue of the items available for sale with an estimate of their approximate worth. A copy of the catalogue was furnished RFC.

Max Bailis & Sons, the plaintiffs (hereinafter referred to as Bailis), made an offer on August 12, 1936, to purchase certain material and property located at Eagle's Phoenixville plant for the sum of $4,000. The offer was made to Industrial Plants Corporation (hereinafter referred to as "Industrial"), a concern which Murphy was using as a selling agent. Industrial accepted the Bailis offer by letter dated August 20, 1936. Bailis thereupon paid the purchase price of $4,000 by two checks drawn to the order of Murphy. The latter, after deducting his commission of 10%, sent a check to Eagle for $3,600. On September 8, 1936, Eagle sent RFC a check for $6,300, which embraced the net proceeds of the sale to Bailis and another sale (not here involved), with directions to RFC to apply the proceeds of the check to the mortgage account due by Eagle. The letter from Eagle to RFC accompanying this check set forth the items of property which had been sold to Bailis but did not identify the purchaser. From the items listed in the letter as having been sold, it appeared that certain of them had not been included in the catalogue and were not intended to be sold under Eagle's arrangement with RFC. Accordingly, RFC caused an inquiry to be made which disclosed that the sale of the property and materials purchased by Bailis was not within the authority granted Eagle by RFC and that, if allowed to stand, it would work an impairment of the mortgage security. Consequently, RFC notified Eagle that it would not release from the lien of the mortgages the property which, ostensibly, had been sold to Bailis.

In the meantime Bailis had removed as much of the property as they desired for their immediate requirements (Bailis was in the scrap metal business) and had sold the remainder to Shaffer & Max for $4,630. The latter sale was apparently consummated on November 3, 1936 (see plaintiffs' Exhibit 10 wherein the date of the

bill of sale is stated to be November 3, 1936). Eagle refused to allow Shaffer & Max to remove the remnants which they had purchased from Bailis and in the end (July 1937) Bailis repaid Shaffer & Max $4,630 and interest amounting to $240.

Bailis claims damages from RFC by the amount of the sum repaid by Bailis to Shaffer & Max less a credit for a dividend of $260.45 which Bailis received on a claim they had filed against Eagle in a reorganization proceeding under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. No legal basis is apparent for the measure of damages which the plaintiffs thus lay, but it is unnecessary for us to consider that matter for, in the view we take of the case, there was no contract between Bailis and RFC which the latter could breach, nor will the law imply a quasi-contract between Bailis and RFC under the facts shown.

 It is essential to the appellants' theory of a contract between them and RFC that Murphy be found to have acted as RFC's agent for the sale of Eagle's unused machinery and equipment. The appellants concede (Appellants' Brief, p. 6) that "some question can be raised as to whether Murphy was a formally constituted and acknowledged agent" of RFC. Resort to adjectives for definition of the relationship is superfluous. It may be said unqualifiedly that the facts as found by the learned trial judge (and they are not open to dispute) fail even to suggest that Murphy was or was ever held out to be an agent for RFC in the matter of the sale of Eagle's property. The trial court therefore correctly held that Murphy was not RFC's agent and that there was no privity of contract between Bailis and RFC. Certainly no actual authority from RFC to Murphy was shown. There was no "manifestation of consent", either express or implied, to Murphy's acting in RFC's behalf. Cf. Brock v. Real Estate-Land Title & Trust Co., 318 Pa. 49, 56, 178 A. 146; Craig v. Cosgrove, 277 Pa. 580, 583, 121 A. 406; DeWitt v. DeWitt, 202 Pa. 255, 259, 51 A. 987; Restatement, Agency (1933) §§ 7, 26. Nor was there any apparent authority. At no time did RFC indicate or otherwise give Bailis cause to believe that Murphy was authorized to act as its agent. Cf. Weir v. Washington Trust Company, 263 Pa. 72, 77, 78, 106 A. 88; Parker v. Citizens' Insurance Co., 129 Pa. 583, 587, 18 A. 524; Adams Express Co. v. Schlessinger, 75 Pa. 246, 256;

Dodge v. Williams, 47 Pa.Super. 302, 306, 307; Restatement, Agency (1933) §§ 8, 27. The appellants failing to show that they acted to their detriment in reasonable reliance upon manifestations by RFC as to Murphy's authority, no question of estoppel is presented. See 1 Williston on Contracts (rev. ed. 1936) § 277, pp. 803-804.

We turn to the appellants' contention that they are entitled to recover on the basis of a quasi-contract. In the opinion of the court below it is stated that "This suit, however, is not based upon the theory of a quasi-contract * * *." But the appellants say (Appellants' Brief, p. 7) that such was the exact theory upon which they relied at the trial below. However that may be, we shall consider whether they have averred and proven facts which would give rise to a quasi-contract. The pertinent inquiry is whether the appellants state a cause of action on any legally supportable grounds.

 Unlike true contracts, quasi-contracts are not based on the apparent intention of the parties to do or to forbear doing a particular thing. A quasi-contract does not arise out of a promise. See Restatement, Contracts (1932) § 5. In fact it is imposed in direct opposition to the intention of the party charged therewith. Such contracts are the means which the law has adopted to raise up obligations in order to promote justice. See Hertzog v. Hertzog, 29 Pa. 465, 467, 468; 1 Williston on Contracts (rev. ed. 1936) § 3, pp. 7-10. Thus, one who is unjustly enriched at the expense of another may be required for that reason alone to make restitution. Restatement, Restitution (1937) § 1. But, in order to establish unjust enrichment, is is not enough merely to show one's retention of a benefit. The retention must also be unjust. Restatement, Restitution (1937) § 1, comment c. Even assuming, therefore, that RFC received a benefit as a result of Eagle's payment made from the proceeds of the sale to Bailis, that, of itself, is not sufficient to entitle the plaintiffs to recover. They must go further and show that RFC was not entitled to receive or retain so much of Eagle's payment on account of its mortgage liabilities as had come to Eagle from the sale to Bailis. This, the appellants were unable to do; and apparently misconceiving the extent of their burden in such regard, they content themselves with the assertion (Appellants' Brief, p. 7) that "a quasi-contractual relationship of trust was created by reason

of the receipt and retention of the money [by RFC]."

The check, which RFC accepted from Eagle, it had a right to receive in payment on account of Eagle's overdue mortgage liabilities. Nor is it unjust for RFC to retain the payment. Whether Eagle is accountable to Bailis for incomplete performance of the contract of sale is wholly immaterial to the question with which we are here concerned. Moreover, there was no evidence to show that the machinery and equipment which Bailis actually removed and used was worth less than the net proceeds of the sale to Bailis which Eagle used in making its payment to RFC. Nor was there any proof of the value of the remnants which Bailis sold to Shaffer & Max other than the price stipulated in the private agreement between those parties. In short, it does not appear that Bailis did not receive in actual value property commensurate with the payment which RFC received from Eagle as a result of the Bailis sale. The situation in which the appellants find themselves is due largely to their own failure to ascertain the authority of the special agent with whom they dealt and the existence of the liens on the property which they purported to buy. As the learned trial judge competently found, Bailis paid the purchase price to Murphy without making any inquiry of either the first or second mortgagee as to whether the subject matter of the sale would be released from the liens of the mortgages. Under the facts shown there was no basis for a finding of unjust enrichment on the part of RFC.

The cases which the appellants cite are not in point. Most of them are applications of the rule that where an assumed agent purports to act in behalf of a corporation which receives and retains the benefits of the agent's acts, the purported principal will be bound by the agent's conduct in such regard. Here, Murphy did not purport to act as the agent of RFC and any benefit which the latter received it obtained indirectly as the mortgage creditor of Murphy's real principal. The retention of benefits which binds a purported principal to an assumed agent's conduct is

where the principal has knowledge of the facts and has not changed his position and his only claim to the benefits arises from the action of the agent.[1] Such is not this case. Nor may RFC be held accountable to Bailis on the basis of implied ratification. Before a purported principal can be held liable on the theory of ratification "it is indispensable that the act ratified must have been done by the assumed agent as agent and in behalf of a principal." Edwards v. Heralds of Liberty, 263 Pa. 548, 553, 107 A. 324, 326, quoting from Mechem on Agency.

The judgment of the District Court is affirmed.

Judge CLARK did not participate in the decision of this case.

[1] See Restatement, Agency (1933) § 99; Frey v. Dougherty, 286 Pa. 45, 48, 132 A. 717; Davis v. Carroll-Porter B. & T. Co., 276 Pa. 71, 75, 119 A. 742; Pannebaker v. Tuscarora V.R.R.Co., 219 Pa. 60, 63, 64, 67 A. 923; Wheeler & Wilson Co. v. Aughey, 144 Pa. 398, 407, 22 A. 667, 27 Am.St.Rep. 638; Hughes v. First National Bank of Waynesburg, 110 Pa. 428, 432, 1 A. 417; Thrall v. Wilson, 17 Pa.Super. 376, 382, 383.