ESTATE OF JOSEPH M. GAGLIARDI, DECEASED, RICHARD
F. GAGLIARDI AND ELAINE CAMPBELL, EXECUTORS,
PETITIONERS, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket No. 3434-86.          Filed December 28, 1987.

*William J. Hagan,* for the petitioner.
*Greely Curtis,* for the respondent.

TANNENWALD, *Judge*: Respondent determined a defi-
ciency in petitioner's Federal estate tax of $20,264.10. After
concessions by petitioner, the issues for decision are: (1)
Whether funds in decedent's bank account against which
checks, representing gifts, were written before decedent's
death and paid both before and after are includable in the
gross estate; and (2) whether other gifts, made through a
brokerage account, were completed so as to remove the
funds from the estate. The parties have agreed that a third
issue, the valuation of certain Flower Bonds in decedent's
estate, will depend on the answer to these two questions.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of
facts and attached exhibits are incorporated herein by this
reference.

Petitioner is the Estate of Joseph M. Gagliardi. Joseph
M. Gagliardi is hereinafter referred to as "decedent."

Decedent died testate at 12:15 a.m. on February 22, 1982. He was domiciled in Pennsylvania at the time of his death. At all times pertinent, he lived in a nursing home because of his physical disabilities; his mental capabilities were unimpaired. His son and daughter, Richard F. Gagliardi (Gagliardi) and Elaine Campbell, were appointed executors by the Register of Wills, Delaware County, Pennsylvania. At the time of his death, decedent had two other surviving children, Joseph Gagliardi, Jr., and Rosalind Schade.

On July 14, 1979, decedent granted Gagliardi a general power of attorney with respect to all of his assets.[1] On March, 28, 1980, decedent gave Gagliardi a special power of attorney with respect to a checking account at the Philadelphia National Bank.[2] On February 4, 1982, decedent gave Gagliardi a special power of attorney with respect to assets being held for him by Bache, Halsey, Stuart, Shields Inc. (Bache).[3] No reference to making gifts is contained in any of these documents.

Decedent intended to make gifts of $10,000 to each of his children during 1982 and gave Gagliardi oral instructions to take the necessary steps to carry out his intent. Decedent gave gifts of $3,000 to each of his children in 1979, 1980, and 1981. On February 4, 1982, Gagliardi wrote checks to himself and his brother and sisters on decedent's Philadelphia National Bank checking account. Each check was for

[1]This power of attorney provided that Gagliardi could, among other things, "execute all instruments and to do all things in all matters, affairs, or properties of any description which I/we may at any time own or be entitled to, the same extent that I/we could do if present and active, * * * withdraw all or any funds that may be deposited * * * in any bank or trust company, and * * * issue checks or orders against the same, * * * sell, assign, transfer, and deliver all bonds, shares of stock in corporations, and policies of insurance, * * * [and] sell and convey all property, real and personal." It also gave "my/our said attorney, or his/her substitute or substitutes, full power and authority to do and perform all and every act and thing whatsoever, requisite and necessary to be done in and about the premises, as fully to all intents and purposes as I/we might or could do, if personally present, hereby ratifying and confirming all that my/our said attorney or his substitute or substitutes shall lawfully do or cause to be done by virtue hereof."

[2]This power provided that Gagliardi could "withdraw all or any part" of the specified checking account, and endorse instruments requiring endorsement.

[3]This power gave Gagliardi power "to operate and conduct [decedent's] account * * * [and] to give and place any and all orders * * * for the withdrawal of funds." It also gave Gagliardi "full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully to all intents and purposes as the undersigned could do if personally present, hereby ratifying and confirming any and all orders, instructions and/or acts of said attorney heretofore or hereafter given or performed and executed or complied with or relied on by said BACHE." Finally, it provided that Gagliardi was "solely the agent of [decedent]" and that all of Gagliardi's "acts and transaction * * * are solely for the account and responsibility of [decedent]."

$3,750. The checks were cashed as follows:

| Payee | Date cashed |
| --- | --- |
| Richard Gagliardi | 2/19/82 |
| Elaine Campbell | 2/23/82 |
| Joseph M. Gagliardi, Jr. | 2/23/82 |
| Rosalind Schade | 3/03/82 |

An additional check was made out to Joseph Gagliardi, Jr., on February 20, 1982, in the amount of $95.

Securities were transferred to decedent's account at Bache on February 16, February 17, February 19, and February 23, 1982. Gagliardi told Bache that the securities were to be sold and gifts of "$10,000 or thereabouts" were to be given to each of decedent's children and their spouses. Bache required written instructions to issue checks, and all requests to Bache to issue checks were in writing, on forms supplied by Bache and specified the amounts and payees of the checks.[4] Securities were sold on February 18, February 22, February 23, February 24, and February 25, 1982.

On February 17, 1982, Gagliardi requested Bache to transfer funds in the amount of $5,000 to each of the children of the decedent. In accordance with this request Bache issued its checks, dated February 18, 1982, which were cashed as follows:

| Payee | Date cashed |
| --- | --- |
| Richard Gagliardi | 2/19/82 |
| Elaine Campbell | 2/23/82 |
| Joseph M. Gagliardi, Jr. | 2/25/82 |
| Rosalind Schade | 3/03/82 |

On February 18, 1982, Gagliardi requested Bache to transfer funds in the amount of $7,200 to each of the spouses of the children of the decedent. In accordance with this request, Bache issued checks dated February 22, 1982, which were cashed as follows:

| Payee | Date cashed |
| --- | --- |
| Franklin Schade | 3/03/82 |
| Betsy A. Gagliardi | 2/25/82 |
| Lorraine Gagliardi | 3/08/82 |
| Gordon Campbell | 3/10/82 |

[4] All the requests to Bache provided that decedent "relinquish[ed] all right, title, and interest" and "finally and irrevocably release[d] and discharge[d] [Bache] of any claims by * * * my legal representatives with reference to the foregoing" funds requested to be transferred. None of the requests indicated the specific securities to be sold to provide the funds, despite spaces on the form for providing that information.

The checks were issued after the death of the decedent earlier on February 22, 1982.

On March 1, 1982, Bache issued additional checks as follows:

| Payee | Amount | Date cashed |
| --- | --- | --- |
| Elaine Campbell | $2,003.89 | 3/04/82 |
| Rosalind Schade | 2,003.50 | 3/08/82 |
| Betsy A. Gagliardi | 2,003.50 | 3/05/82 |
| Lorraine Gagliardi | 2,003.50 | 3/10/82 |

At the time Bache issued a check, it charged decedent's account with the amount thereof.

Petitioner filed a Federal estate tax return (Form 706) on August 19, 1982. Petitioner filed a partial Form 706 designated as "Revised," on April 8, 1983. The only change was the reduction in the balance of the Philadelphia National Bank checking account from $13,026.80 to $537.80.

## OPINION

Section 2001[5] imposes a tax on the transfer of the taxable estate of all citizen and resident decedents. Section 2051 defines taxable estate as the gross estate less deductions. "The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death." Sec. 2033. Whether decedent had an interest in property at the time of his death is governed by State law. *Estate of Gamble v. Commissioner*, 69 T.C. 942, 948 (1978). Petitioner has the burden of proof. *Welch v. Helvering*, 290 U.S. 111, 115 (1933); Rule 142(a).

Because all the transfers at issue were made by Gagliardi acting under powers of attorney given him by decedent, we must first determine whether, under relevant State law, those transfers were effective.[6] The general rule in Pennsylvania is that a power of attorney does not give the agent

---

[5]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[6]The parties have assumed that Pennsylvania law is the relevant State law, and we accept their assumption. In this connection, we note that, in respect of one aspect of the case, petitioner suggests that New Jersey law may be applicable but then states that Pennsylvania and New Jersey law are the same. Respondent interposed no objection to this characterization.

the power to make gifts of the principal's property. See *Baldwin v. Loesel,* 333 Pa. 26, 3 A.2d 389 (1939); *Lewis v. Lewis,* 203 Pa. 194, 52 A. 203 (1902).[7] The Pennsylvania Supreme Court has held, however, that when intent to give a gift is manifested and a power of attorney is "in the circumstances, the most [the donor] could do to effect delivery" an effective gift is given by the agent acting under that power. *Cost v. Caletri,* 483 Pa. 11, 394 A.2d 513, 518 (1978). The circumstances in that case were much the same as in this one—the donor was in a nursing home when he signed the power of attorney and died soon after the gift was made. Because of the similarity of the circumstances and our finding that decedent intended to give gifts to his family, we hold that the powers of attorney were broad enough to authorize the making of gifts on behalf of decedent. We turn now to the question as to whether the gifts were completed prior to decedent's death so as to exclude the amounts involved from his estate.

The first issue is whether the funds represented by the checks drawn by Gagliardi on decedent's bank account on February 4, 1982, are properly excludable from the gross estate. Respondent's regulations provide:

The amount of cash belonging to the decedent at the date of his death, whether in his possession or in the possession of another, or deposited with a bank, is included in the decedent's gross estate. If bank checks outstanding at the time of the decedent's death and given in discharge of bona fide legal obligations of the decedent incurred for an adequate and full consideration in money or money's worth are subsequently honored by the bank and charged to the decedent's account, the balance remaining in the account may be returned, but only if the obligations are not claimed as deductions from the gross estate. [Sec. 20.2031-5, Estate Tax Regs.]

It is clear that, under this regulation, the funds represented by the check written to Gagliardi, which was paid on February 19, 1982, i.e., prior to decedent's death, were properly excluded from the estate since the funds were no longer on deposit or otherwise in decedent's possession. Cf. *Cost v. Caletri, supra.*

---

[7] The broad authority to do all things the decedent could do (see notes 1 and 3 *supra),* runs only to the performance of the acts specifically authorized by the power of attorney. *Mott v. Kaldes,* 288 Pa. 264, 135 A. 764 (1927); *Zidek v. Forbes Nat. Bank,* 159 Pa. Super. 442, 48 A.2d 103 (1946).

The more difficult question involves the checks that were not paid until after decedent died. Under the regulation, the funds represented by those checks should be included in the gross estate because, under Pennsylvania law, the cash represented by the checks still "belonged" to decedent.[8] We have held, however, that if checks are written to make gifts to charitable organizations, the date of payment of the check relates back to the date of the check. *Estate of Belcher v. Commissioner,* 83 T.C. 227 (1984). In that case, we expressly reserved the question of whether the relation-back doctrine should be extended to noncharitable gifts. 83 T.C. at 239.

We think that it should not be so extended. Our decision in *Estate of Belcher* was based on the special characteristics of charitable contributions, including the possibility that the estate would receive an offsetting deduction under section 2055 if the funds represented by the checks were included in the gross estate (83 T.C. at 236-238) and, more importantly, our prior decision in *Estate of Spiegel v. Commissioner,* 12 T.C. 524 (1949), involving the deductibility of charitable contributions for income tax purposes. In *Estate of Spiegel* we held that charitable contributions made by check were deductible in the year the check was issued rather than the year paid. Not following this case in *Estate of Belcher* would have led to the result that payments that had been deducted for income tax purposes were still includable in the gross estate.

These bases of decision are not present in the noncharitable gift situation—gifts are not deductible for income tax purposes and, if made after death, do not reduce the gross estate for estate tax purposes. Thus, the reasoning of *Estate of Belcher* does not warrant extension of the relation-back doctrine to noncharitable gifts. Indeed, the Seventh Circuit Court of Appeals has so stated in holding that the relation-back doctrine does not apply to noncharitable gifts. *McCarthy v. United States,* 806 F.2d 129 (7th

---

[8]Delivery of a check does not complete a gift under Pennsylvania law. See *In re Mellier's Estate,* 320 Pa. 150, 182 A. 388 (1936). Also, under Pennsylvania's version of the Uniform Commercial Code, a check "does not of itself operate as an assignment of any funds in the hands of the drawee." 13 Pa. Cons. Stat. Ann. sec. 3409(a) (Purdon 1984), and "A customer may by order to his bank stop payment of any item payable for his account." 13 Pa. Cons. Stat. Ann. sec. 4403(a) (Purdon 1984).

Cir. 1986).[9] Furthermore, since *Estate of Belcher,* we have held that the relation-back doctrine should not be extended for gift tax purposes to a situation where checks written to make noncharitable gifts were outstanding for more than a reasonable time under State law, casting doubt on whether they had been unconditionally delivered. *Estate of Dillingham v. Commissioner,* 88 T.C. 1569 (1987).

Petitioner argues that respondent's regulation frustrates Congress' intent to allow gifts of up to $10,000 per year per donee tax free. We believe that the regulation, which has been in effect since 1958 and which requires cash gifts to be complete under State law by the date of death to avoid Federal estate tax, is a reasonable construction of the term "interest" in property contained in section 2033. All States have adopted article 4 of the Uniform Commercial Code (see U.C.C., 1 U.L.A. 1 (West Supp. 1987)), part of which we have quoted. Note 8 *supra.* Also, we have not found any State that recognizes delivery of a check to be a completed gift of the underlying funds. See 38 C.J.S. Gifts, sec. 52 (1943 & Supp. 1987).

Finally petitioner argues that the four checks operated as an equitable assignment of the account. We disagree, because the checks did not completely dispose of the funds in the account. See *In re Taylor's Estate,* 154 Pa. 183, 25 A. 1061 (1893).

Because decedent had an interest in the funds represented by the February 4, 1982, checks outstanding at his death, these funds were improperly excluded from the gross estate.[10]

We now turn to the second issue—whether the funds represented by the checks written by Bache were properly excluded from the gross estate. Whether decedent retained an interest in these funds at his death so that they would be included under section 2033 depends on whether the checks constituted completed gifts under State law at the time of death. For a gift to be valid, Pennsylvania law

---

[9]But see *Bacchus v. United States,* an unreported case (D. N.J. 1985, 57 AFTR 2d 86-1519, 86-1 USTC par. 13,669) (extending relation back to noncharitable gifts without discussion of the distinction between charitable and noncharitable gifts).

[10]Petitioner introduced no evidence as to the date of payment of the Feb. 20 check to Joseph Gagliardi, Jr. Petitioner has therefore failed to carry its burden of showing that that check was properly excluded.

requires donative intent on the part of the donor and actual or constructive delivery to the donee such that the donor has given up all dominion and control over the property. *Fiore v. Fiore*, 405 Pa. 303, 174 A.2d 858 (1961). A gift may be delivered to a third party (that is, someone other than the donee) if the third party has "explicit directions * * * as to the person to whom final delivery is to be made, as well as the time when * * * or contingency upon which it is to be made." *In re Rynier's Estate*, 347 Pa. 471, 32 A.2d 736, 739 (1943).

Petitioner argues that delivery of the stock to Bache, combined with Gagliardi's instructions to Bache, completed the gifts. Respondent, on the other hand, argues that the instructions given Bache were not sufficient, that delivery of the checks to the donees was required because Bache was decedent's agent, and that delivery of the checks alone was not sufficient because mere delivery of checks is not a complete gift under Pennsylvania law.

We disagree with petitioner that delivery of the stock completed the gifts. Decedent's plan was to give gifts of cash, not of stock, so additional steps were required after delivery to effectuate decedent's intent. More importantly, petitioner, who has the burden of proof, failed to show that Gagliardi's oral instructions were sufficiently specific. Gagliardi told Bache that the purpose of giving it the securities was to make gifts to each of decedent's children and their spouses, and that the gifts should be of "$10,000 or thereabouts." We think this is too vague, given that the securities were transferred to Bache and sold and checks distributed in several steps over a 2 week period, that the exact amount of the gift to each person was dependent upon the other gifts that they had been given (that is, the February 4 checks), and that Bache itself required more definite, written instructions.[11]

We agree with respondent that Bache was acting as decedent's agent. As decedent's agent, Bache's authority terminated at decedent's death. *In re Kata's Estate*, 363 Pa. 539, 70 A.2d 351 (1950); *Estate of Krempasky*, 348 Pa. Super. 128, 501 A.2d 681 (1985). Thus, Bache did not have

---

[11]We note that, even if we were to accept petitioner's argument, it would not extend to the proceeds from the sale of securities given to Bache on Feb. 23, 1982, after decedent died.

authority on February 22 to sell securities and deliver checks to the donees. Consequently, the funds represented by checks written on February 22 and March 1 were improperly excluded from decedent's estate.

We disagree with respondent, however, that the written instructions to Bache were not sufficient to remove the funds represented by the checks written before decedent's death from the estate.[12] As decedent's agent, Bache did have authority to sell the securities and write these checks upon Gagliardi's instructions under his power of attorney. Under the terms of the request to Bache to issue the checks, decedent gave up "all right, title, and interest" in the funds. We think this is sufficient to eliminate decedent's interest in the property when the checks were properly issued by Bache. Respondent's regulation regarding decedent's cash on hand and in the bank is not applicable because, pursuant to its agreement with decedent, Bache removed the funds from decedent's account at the time it issued the checks so that those checks were a commitment of Bache's own funds. The checks can be analogized to cashier or certified checks in respect of which a customer of a bank for whose benefit the checks are issued has no right to stop payment. See 9 C.J.S. Banks and Banking, secs. 344 and 381 (1938 & Supp. 1987).

In summary, the funds represented by checks issued against decedent's checking account and cashed before his death, as well as the funds represented by checks issued by Bache before his death, were properly excluded from his gross estate. Funds represented by checks issued against decedent's account and cashed after his death and by checks issued by Bache after his death, are includable.

*Decision will be entered under Rule 155.*

---

[12]We note that there were sufficient funds in decedent's Bache account to cover those checks at the time they were written.