Estate of Henry Hauptfuhrer, Deceased, Henry Hauptfuhrer, Jr., George J. Hauptfuhrer and Albert F. Hauptfuhrer, Executors v. Commissioner.
Estate of Henry Hauptfuhrer v. Commissioner
Docket No. 17086.
United States Tax Court
1950 Tax Ct. Memo LEXIS 68; 9 T.C.M. (CCH) 974; T.C.M. (RIA) 50265; October 24, 1950
Harry J. Alker, Jr., Esq., Land Title Bldg., Philadelphia, Pa., and Frederick E. S. Morrison, Esq., for the petitioners. William H. Best, Jr., Esq., for the respondent. LeMIRE Memorandum Findings of Fact and Opinion LeMIRE, Judge: This proceeding involves an estate tax deficiency of $130,149.88. The decedent was a resident of Montgomery County, Pennsylvania, and his estate tax return was filed with the collector of internal revenue for the first district of Pennsylvania. The principal issue involved is whether the respondent erred in including in decedent's gross estate the value of the remainder interests in three inter vivos trusts which he created for the benefit of his three sons. A number of minor issues were raised in the pleadings, some of which have been waived by the petitioners. Those remaining for our determination are: the value of certain parcels of real estate; the value of certain real estate bonds and mortgages; the value of Government bonds; the balance on deposit in one of decedent's bank accounts; the allowance of certain claims against the estate; and the amounts allowable as executors' commissions, attorneys' fees, *70 and other expenses of the administration. Each of the issues will be disposed of separately. Remainder Interests in Inter Vivos Trusts
Findings of Fact: The decedent in 1933 created separate trusts for his three sons, George J., Henry, and Albert F. Hauptfuhrer. In each of the trusts all three of the sons were named as individual trustees and The Pennsylvania Company for Insurance on Lives and Granting Annuities as corporate trustee. The corpus of each trust consists of 10,000 shares of National Dairy Products Corporation common stock. In each of the trusts one of the sons was named life beneficiary and was given a general power of appointment over the remainder interest, which upon failure of the power was to go to the surviving children per stirpes, or heirs at law. Each trust instrument also contained a provision permitting the life beneficiary, with the consent of the grantor, to terminate the trust and have distributed to him both the income and principal thereof. The pertinent provisions of the trust for Henry Hauptfuhrer, Jr., which were identical for all purposes here material with these of the other trusts, were as follows: "IN TRUST, to pay and distribute the net income *71 from the trust estate at least quarter-yearly unto Henry Hauptfuhrer, Jr., during his life; and "IN TRUST, during the life of Henry Hauptfuhrer, Jr., to pay and distribute unto him such part or parts or the whole of the principal of the trust estate as he shall, by writing lodged with the Trustees request, provided such request be in writing approved by the Settlor during his lifetime, and after the decease of the Settlor by the Trustees, or a majority of them, and to the extent of such distribution of principal the interests of all persons therein shall be thereby terminated and ended; and "IN TRUST, from and after the death of Henry Hauptfuhrer, Jr., then to pay and distribute the net income from the then remaining trust estate, if any, and the then remaining principal thereof unto and among such person or persons related to Henry Hauptfuhrer, Jr., by blood or marriage and/or for such charities or religious purposes as Henry Hauptfuhrer, Jr., by writing lodged with the Trustee or by last will and testament, shall nominate and appoint, in such manner, at such times and for such interests as he shall determine; and any part of the trust estate, both income and principal, which *72 shall not be or become subject to distrubution under the power aforesaid shall be paid and distributed upon the death of Henry Hauptfuhrer, Jr., unto his then surviving children and issue, children and issue to take by representation, per stirpes * * *; and "IN TRUST, anything hereinbefore to the contrary notwithstanding, if by reason of misfortune, lack of income or other cause, the share of principal and/or income payable to any person hereunder shall not be sufficient, in the opinion of the Trustees, for the proper care, maintenance, education and support of such person, then the Trustees shall be entitled, in their sole and absolute discretion, to apply out of the principal from which such person is receiving or entitled to receive income, or out of the residuary trust estate, such part or parts thereof as the Trustees shall determine, and to the extent of such application the interest of all persons therein shall be thereby diminished; * * *
"It is hereby expressly stipulated and agreed that all payments of income and/or principal payable to any person hereunder shall, to the fullest extent permitted by law, be free and clear of his or her debts, contracts, engagments, *73 alienations and anticipations, and that the same shall not be liable to any levy, attachment, execution or sequestration. * * * "It is hereby expressly stipulated and agreed that during the life of the Settlor the Settlor shall be entitled to direct and control the exercise by the Trustees hereunder of the powers and authority herein conferred upon the Trustees * * *
"The Settlor hereby expressly agrees that the trust created hereby is irrevocable, and that the trust estate and all rights, powers and authority hereunder vested in the Trustees, and their successors, and/or the survivor or survivors of them, upon the date hereof without any right being reserved in the Settlor to receive any principal or income from the trust estate, or to alter, amend or modify any rights or interest therein; and the Settlor hereby acknowledges this trust and the said assignment and transfer to be irrevocable and to be vested as aforesaid." In determining decedent's estate tax liability the respondent included in the gross estate under section 811 (d) (2), Internal Revenue Code, the value of the remainder interests in each of the trusts, after life estates in *74 the three sons, in the following amounts: Trust for H. Hauptfuhrer, Jr.
$107,492.39
Trust for Albert Hauptfuhrer
75,833.72
Trust for George Hauptfuhrer
100,089.68
Total
$283,415.79
Opinion: Petitioners contend that the respondent erroneously included the value of the remainder interests in the three trusts in decedent's gross estate. They make no objection, however, to respondent's determination of the value of such remainder interests. In their brief, petitioners construe the trust agreements, as to parts here material, as follows: "Therefore, whether the trusts be considered separately or as a unit, the result is the same, namely, a transfer by decedent of 30,000 shares of National Dairy Products Corporation common stock for the benefit of his three sons, vesting in them not only the right to receive the income but also the power to receive the principal subject, however, to the consent of the Settlor (decedent) to approve the payment of principal to them during his lifetime. * * *" On this construction of the trust agreements we think that the issue presented is controlled by our decision in Estate of Charles M. Thorp, 7 T.C. 921, affd. *75 , Thorp's Estate v. Commissioner, 164 Fed. (2d) 966 (C.C.A., 3rd Cir.), certiorari denied, 333 U.S. 843. The Thorp case also involved a Pennsylvania trust for the benefit of the grantor's wife and children. As in the instant case, the trust instrument provided that the life beneficiaries during the lifetime of the grantor, and with his consent, might require the trustees to terminate the trust and distribute the entire trust property to them. Upon the death of the life beneficiaries, their children, if any, were to receive the remainder interests per stirpes. We held that the value of the remainder interests was includible in the gross estate under section 811 (d) (2), Internal Revenue Code. The petitioners undertake to distinguish the Thorp case on the ground that the trust there could not have been terminated by the life beneficiaries and the settlor under the laws of the State of Pennsylvania because of the contingent interests of the children of the life beneficiaries, whose consent could not have been obtained during the lifetime of *76 the grantor, whereas in the instant case the trusts could have been terminated under Pennsylvania law by the life beneficiaries, with the consent of the grantor, without any such provision in the trust agreements. In this connection, petitioners rely upon Helvering v. Helmholz, 296 U.S. 93, which they say stands for the proposition that: "* * * a power in the settlor to alter, amend, revoke or terminate with the consent of all of the beneficiaries having an interest therein, vested or contingent, which power adds nothing to the rights conferred upon the settlor by local law, is not a taxable power within the provisions of Sec. 302 (d) (1) of the 1926 Revenue Act, now Sec. 811 (d) (2) of the Internal Revenue Code. * * *" Petitioners contend that this principle of the Helmholz case is embodied in the respondent's Regulations 105, section 81.20[1]
*77 In the Thorp case the taxpayers also relied upon the Helmholz case, which we distinguished on several grounds, one being the impossibility of obtaining the consent of the contingent beneficiaries to the revocation. The appellate court discussed the Helmholz case but did not consider it controlling, in the light of cases like Union Trust Company of Pittsburgh v. Driscoll, 138 Fed. (2d) 152, certiorari denied, 321 U.S. 764, and Commissioner v. Estate of Holmes, 326 U.S. 480. A doubt was expressed by the court as to whether the Helmholz case had "survived the impact of the principles enunciated in such cases as Helvering v. Hallock, supra, and Commissioner v. Estate of Holmes, supra", although the reference apparently was to that feature of the Helmholz case dealing with the retroactive application of section 302(d) of the Revenue Act of 1926. In the Helmholz case the settlor was also a life beneficiary of the trust. It was in her capacity as a beneficiary that she had the power under the trust agreement, and under the general rule of law which the Court assumed to prevail in the State of Wisconsin, in conjunction with the other *78 beneficiaries, to terminate the trust. What the Court said was that: "* * * The general rule is that all parties in interest may terminate the trust. The clause in question added nothing to the rights which the law conferred. Congress cannot tax as a transfer intended to take effect in possession or enjoyment at the death of the settlor a trust created in a state whose law permits all the beneficiaries to terminate the trust." (Italics supplied.) The Court did not say that Congress could not tax in the estate of a settlor property of a trust which he held a power to terminate, whether the power was reserved in the trust agreement or was conferred by state law. This was the position taken by the Circuit Court of Appeals for the Third Circuit in Commissioner v. Allen, 108 Fed. (2d) 961, certiorari denied, 309 U.S. 680, where it said: "* * * In the Helmholz case [296 U.S. 93,] the settlor was one of the beneficiaries to whom the power was given by the trust indenture to terminate the trust and return the property to the settlor if all of the beneficiaries *79 agreed in writing that that should be done. No power to revoke the transfer or change the beneficiaries was reserved to the settlor as such. Her only power in connection with a possible termination of the trust and a return of the property to herself came to her as one of the beneficiaries and not as the settlor. Hence, the case was not within the intent of the statute. * * * "* * * The thing of importance in the Helmholz case was that the power of revocation there rested with the beneficiaries and not with the settlor as such. * * *" Since under the trust agreement here decedent reserved a right to terminate the trusts, or to grant or deny that right to the life beneficiaries, thereby giving the beneficiaries immediate enjoyment of the remainder interests of their respective trusts, we think that the respondent correctly included the value of such remainder interests in the decedent's gross estate. There is another provision in the trust agreements giving the trustees, with the consent of the grantor, the power to distribute to the beneficiaries any or all of the principal of the trusts "* * * if by reason of misfortune, lack of income or other cause, the share of principal *80 and/or income payable to any person hereunder shall not be sufficient, in the opinion of the Trustees, for the proper care, maintenance, education and support of such person * * *." This provision of the trust agreements, in conjunction with the further provision giving the settlor the right during his lifetime to direct the action of the trustees, gives the settlor the clear right to have the trustees distribute the whole of the trust property to the beneficiaries at any time that he deemed it needed for their care, maintenance, education and support. Value of Real Estate Findings of Fact: %there were reported in the estate tax return twenty-two separate parcels of real estate, all but one of which were located in Philadelphia, Pennsylvania, at an aggregate value of $34,221.48. Respondent increased the reported value of two of such parcels, one located in Philadelphia and the other in Pinellas County, Florida, by the respective amounts of $902.63 and $500. Decedent occupied the premises at 1118 Melrose Avenue as a residence. The property became vacant soon after his death and so remained until it was sold in December 1943. It was reported in decedent's estate tax return at *81 the value of $10,021.48. That was the amount at which the property was valued by an experienced real estate dealer who made an appraisal in December 1943 as of the date of decedent's death, September 20, 1943. Respondent determined in his deficiency notice that the value of the property at date of death was $10,924.11. The respondent arrived at this value by deducting from the sale price of $11,500 the accrued taxes, dealer's commissions, and other expenses of the sale. The value of the property in question at the date of decedent's death was not in excess of $10,021.48, the amount at which it was reported in the estate tax return. The Pinellas County parcel comprised a lot about 50 X 75 feet near Clearwater, Florida. The lot adjoined a country club, which was inoperative at the date of decedent's death. It had been purchased by the decedent in 1938. Decedent had been offering the property for sale through real estate agents since about 1940, but up to the time of his death had received no bids for it. It was finally sold by the executors in 1946 for $1,000. Decedent's executors reported the property in the estate tax return as having no value. The respondent determined that *82 it had a value of $500 at the date of decedent's death. Opinion: On the evidence of record, we have found as a fact that the value of the Melrose Avenue property at the date of decedent's death was not in excess of $10,021.48, the amount at which it was reported in the estate tax return. We think that the respondent's increase of the reported value by approximately $900, based solely on the sale price of the property several months later, was unjustified. The evidence as to the lack of value in the lot located in Pinellas County, Florida, is not sufficient to justify setting aside respondent's determination that the property had a value of $500 at the date of decedent's death. One of the executors testified that the property was put up for sale in 1940, but no offers were received. We do not know, however, at what price it was offered, nor do we know what decedent paid for the property in 1938. The witness further testified that taxes for one or two years were unpaid at the date of decedent's death, but we do not know the amount of the taxes. Neither do we have any evidence as to the extent of the recovery of real estate values in this locality between 1943, the date of decedent's *83 death when the property was said to have no value, and 1946, when it was sold for $1,000. On these facts, we must sustain respondent's determination of value. Value of Real Estate, Bonds, and Mortgages Findings of Fact: In the estate tax return the executors reported four bonds, secured by mortgages of Philadelphia real estate, at less than their face value. The respondent determined that three of the bonds were worth their full face value and the fourth, one-half of face value. The amounts of the bonds, the premises mortgaged to secure them, the values determined by petitioner and the values determined by respondent were as follows: Petitioners'
Respondent's
Face amount
Premises
determination
determination
of bonds
mortgaged
of value
of value
$1,500.00
3444 Kip Street
$1,000.00
$1,500.00
Interest from Aug. 24 to
Sept. 20
24.00
$3,500.00
5726 N. 7th Street
2,500.00
3,500.00
Interest from Aug. 24 to
Sept. 20
16.20
$3,400.00
5728 N. 7th Street
2,400.00
3,400.00
Interest from Aug. 24 to
Sept. 20
14.14
$10,000.00
1425 W. Susequehanna Ave.
3,000.00
5,000.00
Interest from Aug. 18 to
Sept. 20
45.87
Opinion: The *84 value of the bonds and mortgages in question reported by petitioners was based entirely on the value of the real estate securing them, discounted approximately one-third to allow for costs. Petitioners produced two witnesses who testified that, in their opinion, the fair market value of the several parcels of real estate in question would not justify a greater value for the bonds and mortgages which they secured than that reported in the returns. The real estate values, they testified, were discounted approximately one-third to allow for costs. The respondent contends that in determining the value of the bonds consideration must be given to the personal responsibility of the makers of the bonds and other factors not reflected in the values reported by the petitioners. In Estate of William Walker, 4 T.C. 390, the value of collateral was accepted as the fair market value, for estate tax purposes, of promissory notes which had been executed by decedent's children, but the evidence there was that the children did not have personal assets sufficient to pay the notes and that the *85 notes had "apparent infirmities" which affected their salability. See also Estate of Elizabeth V. Harper, 11 T.C. 717. No such facts were shown as to the bonds and mortgages in question. There is no evidence as to the personal responsibility of any of the persons liable on the bonds or as to the salability of any of the bonds and mortgages. We have here nothing more than the testimony of petitioners' witnesses as to what, in their opinion, was the fair market value of the real estate securing the bonds, and the further testimony that it was customary in that locality to value real estate bonds and mortgages at approximately two-thirds of the value of the security. On this evidence we cannot make any independent determination of the values of the bonds and mortgages in question and must, therefore, sustain respondent's determination. Value of Government Bonds Findings of Fact: Petitioners reported in the estate tax return $20,000 face amount of United States 2 1/2 per cent bonds, 1953 series G, valued at $19,760, and the same amount of United States 2 1/2 per cent bonds, series D, due July 1949, valued at $16,200. The respondent in his deficiency notice valued *86 the first mentioned bonds at par and the others at $16,400. Opinion: The respondent's determination of the value of the bonds in question must be sustained for lack of evidence in any way tending to show error on his part. One of petitioners' witnesses testified that the values reported in the return were the amounts which the estate finally received from the bank to which the bonds were delivered for surrender. He further testified that the series G 1953 bonds were supposed to be worth face value at the time of decedent's death, but were discounted by the Government because of the delay either of the bank or employees of the Government in handling them. The fact that a penalty may have been incurred for delay in presenting the bonds after decedent's death could have no effect on their value at the date of death. There is no explanation of the difference between petitioners' and respondent's valuation of the series D bonds. On such evidence, or lack of evidence, we cannot find that the value of any of the bonds in question at the date of decedent's death was less than determined by the respondent. Balance on Deposit in Bank Account Findings of Fact: There was reported *87 in decedent's estate tax return a cash balance in the Tioga National Bank and Trust Co. of $2,745.56. The respondent increased the amount to $6,654.56, which was the balance shown by the bank statement as of the date of decedent's death. The difference between these amounts represents the aggregate of several checks which decedent had drawn on the account during his lifetime, but which had not been presented to the bank for payment up to the time of his death. The largest of those checks was one for $3,825 issued to the collector of internal revenue in payment of the September installment of decedent's income tax for 1943. Decedent's total income tax liability for 1943 was $9,448.43 which, according to the collector's records, was paid $3,825 on September 22, 1943; $3,823.18 on December 20, 1943; and $1,800.25 on March 15, 1944. The respondent allowed the deduction of $9,448.43 as a claim against the estate. The amount of $9,471.36 had been claimed on the return. Opinion: Apparently, petitioners are claiming the right to deduct the decedent's tax liability as a claim against the estate and also to deduct the check issued in part payment thereof from the cash balance in decedent's *88 bank account. Obviously, this would be a double deduction not authorized by the statute. This type of situation is dealt with in section 81.10 of Regulations 105, as amended by T.D. 5351, which reads in part as follows: "(f) Cash on hand or on deposit. - The amount of cash belonging to the decedent, either in his possession at the date of death or in the possession of another, or deposited with a bank, should be included. If bank checks outstanding at the time of the decedent's death, given in discharge of bona fide, legal obligations of the decedent incurred for an adequate and full consideration in money or money's worth, and not as transfers coming within the provisions of section 811 (c) or (d) are subsequently honored by the bank and charged to the account, the balance remaining may be returned, provided the payments effected thereby are not claimed as deductions from the gross estate." Respondent correctly included in decedent's gross estate the actual cash balance in the bank account at the date of decedent's death without any reduction on account of the checks outstanding at that time. Claims Against the Estate Findings of Fact: A deduction was claimed *89 in the return of $3,500, designated "Debts." That amount represented the aggregate of three checks which the decedent had drawn on his bank account at The Pennsylvania Company for Insurance on Lives and Granting Annuities on November 1, 1942. These checks were as follows: Payee
Amount
Louis Fortig
$1,000
Theresa Ruth Egan
1,000
Eugene Ruth & Sophie Ruth
1,500
Total
$3,500
Louis Fertig was a chauffeur who had been in decedent's employ for a long period of time. Theresa Ruth Egan was decedent's sister-in-law and Eugene and Sophie Ruth were decedent's brother-in-law and his wife. The two last mentioned checks were intended as gifts. All of the checks were presented to the bank for payment after decedent's death. Respondent stated in the deficiency notice that the amount of these checks, $3,500, "has been disallowed as a deduction because the evidence submitted does not prove that it represents a liability of the decedent." Opinion: Section 812, Internal Revenue Code, provides that the value of the net estate shall be determined by deducting *90 from the value of the gross estate: "(b) Expenses, Losses, Indebtedness, and Taxes. - Such amounts - * * *
"(3) for claims against the estate, * * *
as are allowed by the laws of the jurisdiction, whether within, or without the United States, under which the estate is being administered * * *" No authority has been cited and no argument has been made by the petitioners that an individual payee of a check drawn by a decedent during his lifetime as a gift, but not presented to the bank before his death, holds a claim against the estate of the decedent such as is allowable by the laws of the State of Pennsylvania where decedent's estate was being administered. It does not appear from the meager evidence of record that this question ever arose in the administration of decedent's estate. The checks bear certain endorsements and initials which are not explained. All we know is that all three of the checks were presented to the bank and paid after decedent's death. The bank account was reported in the estate tax return at $4,516.04, without any reduction for these outstanding checks. This was in accordance with the above quoted provision of section 81.10 of Regulations 105, *91 unless the checks were given "in discharge of bona fide, legal obligations of the decedent incurred for an adequate and full consideration in money or money's worth, and not as transfers coming within the provisions of section 811 (c) or (d)." Presumably, it was because of the character of the claims represented by these checks that the respondent did not allow their deduction as he did the amount of the checks outstanding against the account at the Tioga National Bank and Trust Co., discussed under the preceding issue above. Petitioners state in their brief (and it is practically their whole argument on this issue) that "Respondent offered no evidence to disprove that these checks were paid and they therefore should be allowed as a debt." The burden of proof, of course, rested on the petitioners and not on the respondent. All that we know about the checks is that two of them, and probably the third, were intended as gifts and that none of them was presented to the bank for payment until after decedent's death, although they were all issued more than a year previously. That alone is enough to suggest that the checks may have been gifts in contemplation of death or intended to take *92 effect at or after death and did not constitute deductible claims against the estate. Petitioners were put on notice at the hearing that this question confronted them. It might be pointed out in passing that a different question involving a different statute is presented here from that in Estate of Modie J. Spiegel, 12 T.C. 524, where we held that the amount of a check issued to a charitable organization by a decedent a short time before his death, but not presented to the bank until after his death and in the following year, was a payment made by the decedent at the time the check was issued and was deductible in that year. We said that: "Charitable contributions may be gifts in the broad sense, but for tax purposes they fall into a special class and there is special legislation dealing with them. What we said here is intended to apply to charitable contributions and not necessarily to all categories of gifts. * * *" Executors' Commissions, Counsel Fees and Administration Expenses Findings of Fact: The deficiency notice shows that a deduction is claimed in the estate *93 tax return for "Miscellaneous administration expenses" of $5,596.04, of which $4,270.59 was allowed and $1,325.45 was disallowed. The amount allowed was said to be "the amount of actual expenses as disclosed by the records submitted." Opinion: Petitioners offer no evidence on this issue. At the hearing their counsel stated that since this estate was still in the process of administration, this question would be presently deferred and taken up under Rule 50 computation. See also Rule 51 of our Rules of Practice. Decision will be entered under Rule 50. Footnotes
1. The provisions of this section do not apply to a transfer if the power may be exercised only with the consent of all parties having an interest, vested or contingent, in the transferred property, and if the power adds nothing to the rights of the parties as conferred by the applicable local law.↩