ESTATE OF MAYER C. GREENBERG, DECEASED, DANIEL B. GREENBERG, EXECUTOR, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 14215–78.     Filed April 27, 1981.

*Alvin T. Levitt* and *Myron S. Greenberg,* for the petitioners.
*Charles O. Cobb,* for the respondent.

FORRESTER, *Judge*: Respondent has determined a deficiency of $161,820 in the Federal estate tax of petitioner. The sole issue for decision is whether certain debts owed by the decedent at his death are deductible as claims against the estate pursuant to section 2053(a)(3).[1]

### FINDINGS OF FACT

Most of the facts have been stipulated and are so found.

Decedent Mayer C. Greenberg died on August 15, 1974. Probate proceedings were initiated in the Probate Division of the Superior Court of California for Los Angeles County (hereinafter the Probate Court) on August 22, 1974. The decedent's son, Daniel B. Greenberg (hereinafter Daniel), was appointed his executor on September 23, 1974. At the time he filed the petition herein, Daniel resided in Los Angeles, Calif. On November 19, 1975, he filed the Federal estate tax return of the decedent with the Internal Revenue Service Center at Fresno, Calif.

The decedent had incurred various debts during his lifetime of

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable year in issue.

which $720,196 remained outstanding at the time of his death. Included in this amount are four debts (hereinafter the debts) totaling $428,014 ($425,000 principal and $3,014 accrued interest) due and owing to the Bank of America (hereinafter the bank). Two of the notes provided for 12-percent interest and the other two provided for 12½-percent interest. The parties to the instant litigation have stipulated that these represent valid debts of the decedent at the date of his death.

Notice to the creditors of the estate was published in accordance with section 700 of the California Probate Code (hereinafter CPC) on September 26, 1974. This notice provided for presentation of claims to the clerk or to Daniel, as executor, at the offices of the estate's attorneys. Sections 700 and 707 of the CPC provide a 4-month period in which creditors may file or present creditors' claims, which, with respect to the estate herein, expired on January 26, 1975. Prior to the filing deadline, the bank sent several statements of principal and interest due on the debts to the decedent at his business address (which was also Daniel's business address). On February 3, 1975, the bank filed a formal creditor's claim. This was rejected in writing by Daniel, as executor, on February 13, 1975.

On several occasions, after the decedent's death and prior to the filing deadline, Daniel spoke with bank officials about the debts. Asserting that the statements sent by it to the deceased constituted the presentment of creditors' claims (absent verifications), the bank filed a petition on April 11, 1975, in the Probate Court to amend its creditor's claim to conform with statutory requirements (hereinafter petition to amend). Additionally, on April 25, 1975, the bank filed a complaint on rejected claim, misrepresentation, negligence and declaratory relief with the Superior Court of California for Los Angeles County, Civil Division (hereinafter Superior Court action).

Daniel, as executor, contested these actions. Notwithstanding, he instructed his attorneys to begin negotiations toward settlement with the bank soon after the suits were filed. The decision to negotiate was based on Daniel's own conclusions and those of his attorneys that the risk of loss in litigation was considerable. The estate proposed that the claim be paid over an extended period at a reduced interest rate. At that point the bank, relying on advice of its attorneys, rejected any offer other than full and prompt payment of its claim.

A formal hearing on the bank's petition to amend was held on August 11, 1975. By order dated September 18, 1975, the Probate Court denied the bank's petition to amend. The bank had various avenues of appeal from the Probate Court's order on its petition to amend available to it. It decided to begin preparation of a petition for a writ of mandate. At this point, Daniel again sought to open compromise negotiations.

Prior to filing its writ of mandate and prior to the trial of the Superior Court action, the bank entered into a settlement agreement with the estate, subject to the approval of all beneficiaries of the estate and the Probate Court. The compromise provided for reduction in the interest rates from 12 and 12½ percent per annum to 4 percent per annum. Additionally, the maturity dates of the debts were extended to provide for three approximately equal payments due May 1, 1977, May 1, 1980, and May 1, 1981. Under the agreement, the bank agreed to dismiss the Superior Court action and the petition to amend claim, both with prejudice. In April 1976, each of the beneficiaries of the estate,[2] represented by independent counsel, approved the settlement agreement. At this point Daniel, as executor, filed a petition with the Probate Court for an order approving the settlement agreement. On April 26, 1976, after a full hearing on the matter at which oral argument was presented, the Probate Court issued an order approving the settlement agreement.

On May 1, 1977, the estate made the first payment of $141,666 plus interest as provided in the settlement. The parties to the instant litigation have stipulated that the balance of payments required under the settlement agreement will be made.

At the time of his death, the decedent was the chief executive officer and owner of 12 percent of the stock in Telecor, Inc. (hereinafter Telecor), a New York Stock Exchange company. Daniel was then its senior vice president. Telecor was indebted to the bank at that time, as it had had a short-term line of credit with the bank for many years which it had used to finance its business. Telecor's Dun & Bradstreet rating was excellent, either a triple A or a triple A + at the time of decedent's death.

---

[2]The only beneficiaries of the decedent's estate were his wife, Lois Greenberg, his two sons, Daniel B. and Phillip A. Greenberg, and, as contingent beneficiaries, the unborn issue of the decedent's sons.

It had several alternate lines of credit available to it and was often approached by other large banks seeking to represent it.

Prior to the settlement agreement, Daniel discussed the estate's dispute with the bank at a Telecor board meeting in response to concern expressed by bank officials to some Telecor board members. As a result, the independent directors advised management that if at any time management felt the bank's concern reached an unacceptable level they should seek alternative lenders. In fact, Telecor did obtain an additional line of credit with Citi-Corp, but continued to do business with the bank.

Prior to and during the estate's dispute with the bank, both Daniel and Phillip Greenberg had annually renewable personal lines of credit with the bank in the amount of $200,000 each. Although Daniel borrowed funds during the dispute with the bank, he purposely refrained from using his credit line with the bank. Instead, he established a new relationship with the United California Bank and borrowed from it. Additionally, neither Phillip A. Greenberg nor Lois Greenberg was indebted to the bank at the time of the estate's dispute with it.

The petitioner deducted the debts on its State of California inheritance tax returns, which deduction was allowed. The bank's debt, as compromised, was also allowed by the Probate Court in the estate's final accounting.

In its Federal estate tax return, the petitioner deducted the debts to the bank here in issue as claims against the estate pursuant to section 2053(a)(3). Respondent has disallowed this deduction on the basis that events subsequent to the decedent's death rendered them unenforceable under California law.

## OPINION

Section 2053(a)(3) provides that the value of the taxable estate shall be determined, inter alia, by deducting from the value of the gross estate amounts for claims against the estate which represent personal obligations of the decedent at the time of his death, and which are allowable under the laws of the jurisdiction in which the estate is being administered. Sec. 2053(a); secs. 20.2053–1(a)(1), 20.2053–4, Estate Tax Regs. Events occurring subsequent to the decedent's death are to be considered in determining the validity of the claim and, thus, its deductibility. *Estate of Thompson v. Commissioner*, 74 T.C. 858, 861 (1980);

*Estate of Hagmann v. Commissioner*, 60 T.C. 465 (1973), affd. per curiam 492 F.2d 796 (5th Cir. 1974). Cf. *Shedd v. Commissioner*, 320 F.2d 638 (9th Cir. 1963), affg. 37 T.C. 394 (1961). A valid debt of the decedent at the time of his death rendered unenforceable at some point after death is not deductible under section 2053(a). *Estate of Hagmann v. Commissioner*, *supra*. Thus we must consider whether, under California law, the bank's claim against the estate became unenforceable upon its failure to file notice of the claim within the required 4-month period. See *Estate of Thompson v. Commissioner*, *supra*.

The regulations set forth certain criteria to determine when the decision of a local court with respect to allowability of a claim will be accepted for purposes of section 2053(a).[3] Section 20.2053–1(b)(2), Estate Tax Regs., provides in pertinent part:

> (2) *Effect of court decree.* The decision of a local court as to the amount and allowability under local law of a claim or administration expense will ordinarily be accepted if the court passes upon the facts upon which deductibility depends. If the court does not pass upon those facts, its decree will, of course, not be followed. * * * It must appear that the court actually passed upon the merits of the claim. This will be presumed in all cases of an active and genuine contest. If the result reached appears to be unreasonable, this is some evidence that there was not such a contest, but it may be rebutted by proof to the contrary. If the decree was rendered by consent, it will be accepted, provided the consent was a bona fide recognition of the validity of the claim (and not a mere cloak for a gift) and was accepted by the court as satisfactory evidence upon the merits. It will be presumed that the consent was of this character, and was so accepted, if given by all parties having an interest adverse to the claimant. The decree will not be accepted if it is at variance with the law of the State * * *

Under the facts of the instant case, the Probate Court determined the allowability of the bank's claim by consent. Under the above regulation, it is presumed that such is a bona fide recognition of the validity of the claim on the merits because consent was given by "all parties having an interest adverse to the claimant." Sec. 20.2053–1(b)(2), Estate Tax Regs. Each beneficiary of the decedent's estate, represented by independent counsel, approved the settlement agreement. Re-

---

[3]We think it appropriate to note that in cases such as the one before us we are not bound by the decision of a State trial court. See *Commissioner v. Estate of Bosch*, 387 U.S. 456, 457 (1967); *Estate of Lewis v. Commissioner*, 49 T.C. 684, 688 (1968).

spondent argues against this presumption on the basis that the decree was at variance with California law. We disagree.

Respondent correctly states the law of California, that claims of an estate must be filed within the statutory period, and that claims not so filed are barred forever. *Nathanson v. Superior Court of Los Angeles County*, 12 Cal. 3d 335, 525 P.2d 687, 115 Cal. Rptr. 783 (1974). Furthermore, the executor has no authority to waive the statute of limitations on the filing of creditors' claims even though he may feel that the claim is justly due. *In re Erwin's Estate*, 117 Cal. App. 2d 203, 255 P.2d 97 (1953).

Assuming, for purposes of this opinion, that the bank's notices to and discussions with Daniel about the debts prior to January 26, 1975, did not constitute valid creditor's claims, the bank is not necessarily precluded from filing (and thus the debts are not necessarily unenforceable) because in the Superior Court action filed on April 25, 1975, the bank alleged, inter alia, misrepresentation. In California, there is a court-made exception to the filing requirements of the Probate Code, viz, that an executor or administrator is estopped to assert nonpresentation of a claim where he lulled a creditor into a belief that no formal claim was necessary. *In re Estate of Johnson*, 240 Cal. App. 2d 742, 50 Cal. Rptr. 147 (1966). This is the very argument raised by the bank in the Superior Court action.

The question of misrepresentation is one of fact. Had no settlement been reached between petitioner and the bank, it is a question which would have been answered by the Superior Court of California. We believe that where, as here, there is a genuine contest between unrelated parties over the enforceability of a debt which was concededly valid at the time of the decedent's death and where this contest had erupted into litigation and was followed by a settlement agreement approved by all beneficiaries with adverse interests and the Probate Court and where the claim is in fact paid and allowed for State inheritance tax purposes and the final estate accounting, this Court should not decide State court issues of fact. Instead, it is our duty only to decide whether, assuming all of the creditor's allegations of fact to be true and absent any contention that that is not the case, it would have been successful in State court. Furthermore, under these facts, doubts as to the application of State law should be resolved in favor of enforceability of the debts. To hold otherwise is to effectively force an executor to avoid settlement,

where there is a bona fide dispute as to the timeliness of filing a claim, in order to insure a Federal estate tax deduction for the claim. Therefore, we hold that the bank's claim against the estate was enforceable under State law and that the claim is deductible for Federal estate tax purposes.

Respondent relies on *Estate of Gosch v. Commissioner*, T.C. Memo. 1976–82. Although similar to the instant case in a general way, we note that there the law of a different State was involved, the executor voluntarily paid the decedent's debt, payment was not approved by the Probate Court, and there were no findings that payment was agreed to by all parties having an interest adverse to the claimant nor that the claimant was an unrelated party. Cf. *Estate of Lewis v. Commissioner*, 49 T.C. 684 (1968).

Respondent further maintains that the Probate Court in the instant case ruled on and denied the merits of the estoppel issue in its September 18, 1975, order. We disagree. The issue before the Court was whether the statements submitted by the bank met the statutory filing requirements. It is obvious that the Probate Court merely assumed that estoppel was not applicable so that it could reach that primary issue.

Respondent finally asserts that the compromise did not represent a bona fide recognition of the claim's validity (sec. 20.2053–1(b)(2), Estate Tax Regs.), but was, in large part, entered into in the best interests of Daniel, personally, and Telecor, Inc., as debtors of the bank. We cannot agree. The compromise was not approved by the Probate Court until after a formal hearing and oral argument. The judge in that case was undoubtedly aware that waiver of the statute of limitations was unlawful. Approval by him of the settlement agreement must therefore be considered a recognition of the validity of the bank's claim. Moreover, Daniel, as executor, scrupulously avoided conflicts with the bank. He purposely avoided borrowing from it when in need of funds. The directors of Telecor, Inc., sought and obtained an alternative creditor so that no pressure would be placed on Daniel to settle. Finally, the decedent's wife, with representation of independent counsel, agreed to compromise. If such was not legally appropriate, she would have nothing to gain and much to lose from joining in the settlement agreement. Thus, the evidence supports our finding that the compromise was a bona fide recognition of the claim's validity

and that Daniel, as executor, sought the compromise for entirely legitimate purposes.

Because of concessions,

*Decision will be entered under Rule 155.*