ESTATE OF ELLA M. BELCHER, BENJAMIN M. BELCHER, VIRGINIA B. TOULMIN, AND MARTIN ROOB, EXECUTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 12184–77.     Filed August 16, 1984.

*Oscar Hanigsberg, David M. Stern,* and *Laurence Keiser,* for the petitioner.

*Shlomo Aaron Beilis,* for the respondent.

NIMS, *Judge*: Respondent determined a deficiency in Federal estate tax against petitioner in the amount of $37,282.72. After a concession by petitioner, the issues for decision are as follows:

(1) Whether $94,960 in decedent's checking account is includable in decedent's gross estate under section 2031,[1] where checks totaling this amount had been mailed to charitable donees before decedent's death but did not clear the drawee bank until after her death;

(2) Whether petitioner is entitled to deduct the amount of the checks as a charitable contribution under section 2055;[2] and

(3) Whether petitioner is entitled to deduct the amount of the checks as a claim against the estate under section 2053.

---

[1] Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect as of the date of decedent's death.

[2] This issue was not raised in the notice of deficiency or the pleadings. However, both parties address it at trial and on brief. This issue was tried by consent. Rule 41(b)(1), Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT[3]

Some of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference.

Petitioner is the Estate of Ella M. Belcher, decedent. *Estate of McElroy v. Commissioner*, 82 T.C. 509, 510 (1984). Ella M. Belcher is hereinafter referred to as "decedent." Decedent, who died testate on December 31, 1973, was a resident of Lakeville, CT, at the time of her death. Petitioner's executors are Benjamin Moore Belcher (decedent's son, hereinafter sometimes referred to as Belcher), Virginia Belcher Toulmin (decedent's daughter), and Martin Roob (the three of whom are hereinafter sometimes referred to collectively as the executors). Letters testamentary as petitioner's executors were granted to the executors by the Probate Court for the District of Salisbury, CT. When the petition in the instant case was filed, the executors' address was in Sharon, CT.

Decedent's will provides a series of specific bequests, among them, bequests to six named grandchildren of decedent; the will then provides as follows:

NINTH: I order and direct my Executors, hereinafter named, to divide all the rest, residue and remainder of my personal property of which I shall die seized or possessed, or of which I shall be entitled to dispose at the time of my death, including all lapsed money legacies, into as many equal parts or shares as there shall be children, me surviving, of my daughter, VIRGINIA BELCHER TOULMIN, and of my son, BENJAMIN MOORE BELCHER, and children of said daughter and of my said son who shall have predeceased me leaving issue, me surviving; and I give and bequeath one of said equal parts or shares to each of said children, me surviving, of my said daughter and of my said son, and one of said equal parts or shares to the issue, me surviving, of each of said children of my said daughter and of my said son who shall have predeceased me leaving issue, me surviving, in equal shares, *per stirpes*, to his, to her or to their own use, benefit and behoof, absolutely and forever. [Emphasis in original.]

In mid-December 1973, decedent, Belcher, and a part-time secretary met in order to consider decedent's charitable giving in the remainder of 1973. After their decisions were made, checks and accompanying letters were to be prepared and sent

---

[3]The Court adopts the findings of fact made by Judge Herbert L. Chabot, before whom this case was heard. The case was referred to Judge Arthur L. Nims III for opinion on July 13, 1984.

to the charitable donees. Thirty-six checks (in amounts aggregating $94,960) were drawn on decedent's checking account (hereinafter sometimes referred to as the account) at Manufacturers Hanover Trust Co. The 36 checks, together with their accompanying letters, were sent on or about December 21, 1973. On December 21, 1973, there were sufficient funds in the account to cover all of the checks. These checks cleared the drawee bank during January 1974—29 checks ($88,225) by January 10, 1974, and the remaining 7 ($6,735) by January 31, 1974. The payees of all 36 checks are organizations described in section 2055(a). These organizations are hereinafter referred to collectively as the donees.

The executors did not take any action to stop payment on the 36 checks, nor did they take any action to recover the proceeds of the checks from the donees.

Pursuant to the policy of decedent's family, no pledge cards or other similar obligatory instruments in favor of the donees were in existence before December 21, 1973. None of the checks were contracted for, nor were any made for, an adequate and full consideration in money or money's worth.

During December 1971 and December 1972, decedent made charitable contributions totaling $64,690 and $75,093, respectively, to various organizations, including many of the donees.

On decedent's 1973 Federal individual income tax return, charitable contribution deductions under section 170 were claimed, and allowed by respondent, for the amount of each of the checks.[4] On decedent's Federal estate tax return, the executors reported only the net amount of cash on deposit in the account on December 31, 1973, reduced by the $94,960 in checks outstanding on that date.

## OPINION

Petitioner contends that decedent's gross estate does not include $94,960 of the amount in the account, because decedent made gifts aggregating this portion of the account to charitable donees before her death. Respondent contends that the $94,960 is includable in decedent's gross estate under

---

[4]So stipulated. However, it appears that four of the checks are not clearly or fully reflected on decedent's 1973 tax return. Neither side seeks to enlighten us as to these differences.

section 2033 because it was in the account, and decedent had an interest in the account, at the time of her death.

We agree with petitioner.

The value of a decedent's gross estate includes, under sections 2031(a)[5] and 2033,[6] the value of all property to the extent of the decedent's interest therein at the time of her death.

Section 20.2031-5, Estate Tax Regs., provides:

Sec. 20.2031-5 Valuation of cash on hand or on deposit. The amount of cash belonging to the decedent at the date of his death, whether in his possession or in the possession of another, or deposited with a bank, is included in the decedent's gross estate. *If bank checks outstanding at the time of the decedent's death and given in discharge of bona fide legal obligations of the decedent incurred for an adequate and full consideration in money or money's worth are subsequently honored by the bank and charged to the decedent's account, the balance remaining in the account may be returned, but only if the obligations are not claimed as deductions from the gross estate.* [Emphasis added.]

We have emphasized the second sentence of the above-quoted regulation because we believe it should be the focal point of our inquiry in this case. While petitioner makes an alternative argument on brief that the checks in question taken together with the letters to the charitable donees which accompanied the checks constitute pledges, the testimony of petitioner's two witnesses, Benjamin Moore Belcher and William Fowle,[7] was that it was the decedent's consistent practice not to make pledges, and the letters to the charitable donees unequivocally bear this out. Mr. Belcher testified that the letters in question constituted letters of intent, not pledges, although he also testified that the Belcher family, which presumably included his mother, always lived up to that letter of intent.

Mr. Belcher further testified that for a number of years, he met with his mother during the month of December and went

---

[5] SEC. 2031. DEFINITION OF GROSS ESTATE.

(a) GENERAL.—The value of the gross estate of the decedent shall be determined by including to the extent provided for in this part, the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated.

[6] SEC. 2033. PROPERTY IN WHICH THE DECEDENT HAD AN INTEREST.

The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death.

[7] Mr. Belcher is a son of the decedent and one of her executors. Mr. Fowle was, in 1973, the treasurer of Salisbury Congregational Church, one of the decedent's charitable donees.

over her list of charitable donees. Both counsel for petitioner and counsel for respondent questioned Mr. Belcher regarding his own state of mind in connection with the checks, apparently for the reason that this would also reflect decedent's state of mind. He stated that "when I write a check to an eleemosynary institution I consider that a donation has been made." In any event, it seems indisputable that no pledges were intended and therefore that the checks in question were not given in discharge of bona fide legal obligations of the decedent (assuming arguendo that charitable pledges do in fact create legal obligations).

The foregoing, however, does not end our inquiry and we do not assume that the quoted language of the regulation necessarily precludes the exclusion of the outstanding checks from the gross estate under sections 2031 and 2033. A further analysis of the premises presumptively underpinning the regulation is in order.

First, it appears to us that if respondent's argument is correct, that Connecticut law requires the inclusion of outstanding checks in the gross estate on the ground that any bank customer can stop payment on a check until it is honored by the bank,[8] then there is no technical justification for respondent's regulation permitting the exclusion of an outstanding check given in discharge of a bona fide legal obligation. In such case, except for the rule hereinafter discussed, respondent would have to concede that a decedent retained actual command over the account until the instant of death. Nevertheless, the regulation applies a practical rule of reason since outstanding checks given in payment of bona fide legal obligations incurred for an adequate and full consideration, even though includable in the gross estate, would also be deductible under section 2053(a)(3) as claims against the estate, thus creating a "wash."

Second, it seems obvious that the regulation is intended to exclude ordinary gifts from its coverage, although done sub

---

[8]Connecticut law provides:

Sec. 42a–4–403. Customer's right to stop payment; burden of proof of loss

(1) A customer may by order to his bank stop payment of any item payable for his account but the order must be received at such time and in such manner as to afford the bank a reasonable opportunity to act on it prior to any action by the bank with respect to the item described in section 42a–4–303. [Conn. Gen. Stat. Ann. (West 1960).]

silentio, again perhaps for practical reasons, although the justification for doing so is not quite so readily apparent. It is plausible to assume that at the time the regulation was adopted, the intent was to thwart any possible argument that the outstanding check represented a gift not made in contemplation of death or not intended to take effect at or after death.

A reason for concern about the status of outstanding checks drawn to noncharitable donees is perhaps suggested by the facts in *Estate of Hauptfuhrer v. Commissioner*, a Memorandum Opinion of this Court (9 T.C.M. 974, 19 P-H Memo T.C. par. 50,265 (1950)). *Hauptfuhrer* involved three checks which decedent had drawn on his bank account more than a year before his death and which were presented to the bank for payment after the date of death. At least two of the checks were intended as noncharitable gifts. We there pointed out (9 T.C.M. at 980–981, 19 P-H Memo T.C. par. 50,265, at 894–50) that while the circumstances were enough to suggest that the checks may have been gifts in contemplation of death or intended to take effect at or after death, a different question might be represented where (as here) a check was issued to a charitable organization by a decedent a short time before his death, but not presented to the bank until after his death, citing *Estate of Spiegel v. Commissioner*, 12 T.C. 524 (1949).

We think a convincing argument can be made for the proposition that the situation presently before us simply was not contemplated by the regulation.[9] As we have demonstrated, perfectly defensible policy considerations justify the exclusion of outstanding checks issued by a decedent to satisfy binding obligations. Similarly, policy considerations may well justify inclusion in the gross estate of outstanding checks issued to noncharitable donees. No such policy considerations, however, would justify the inclusion of outstanding checks issued in good faith by the decedent to charitable donees prior to his death but cashed after his death. The inclusion of these checks would at the very least create the possibility that they would qualify as section 2055 charitable deductions, again creating a wash.

Any other answer would result in endless confusion and create needless complications in the routine administration of

---

[9]Certainly, this case presents no occasion to in any way question the validity or even the reasonableness of the regulation.

estates. For example, if an executor did not stop payment on an outstanding check or seek to recover the proceeds thereof,[10] he would be subject to surcharge by a beneficiary on the ground that he permitted a dissipation of the estate's funds. If the executor wished to ratify the payment of the checks by an appropriate disclaimer prior to the filing of the estate tax return, he would be able to do so only with the approval of all the beneficiaries of the estate. If he dispensed with obtaining such approval, he would also run the risk of surcharge. Where some of the beneficiaries are minors (as will often be the case), this would involve a court proceeding with the appointment of guardians ad litem, etc. For this Court to unnecessarily put an executor in such a position would be totally unreasonable.

In *Commissioner v. Duberstein*, 363 U.S. 278, 287 (1960), the Supreme Court admonished the courts to base their decisions, in tax cases involving situations which are part of the real world scene, on their "experience with the mainsprings of human conduct." This is an apt case for applying that admonition and we fortunately have a precedent for doing so in the approach of this Court in *Estate of Spiegel v. Commissioner*, 12 T.C. 524 (1949), which dealt with the income tax consequences in a situation identical to the one involved here.

*Estate of Spiegel* involved the question of whether certain checks issued by a subsequent decedent constituted a "payment" within the intendment of section 23(o) of the Internal Revenue Code of 1939 (section 23(o) being the predecessor of present section 170). In brief, the facts were that on December 30, 1942, the taxpayer delivered a $5,000 check payable to the Anti-Defamation League. The taxpayer died on January 8, 1943, and the check cleared the taxpayer's bank on January 11, 1943. A second check, written to Jewish Charities of Chicago, was delivered on December 30, 1942, and cashed on January 4, 1943. (Since the second check was cashed before the taxpayer died, the second check does not involve facts completely parallel to those in the instant case.)

---

[10]The possibility of stopping payment would be remote, if not nonexistent, in Connecticut, at least, since the executor would usually not have been issued letters testamentary prior to the time that the checks normally would have been presented for payment. Under Connecticut law, a putative executor must apply for probate within 30 days from the decedent's date of death, and a noticed hearing must be held prior to the probate court's proving or disapproving the will, unless all interested parties file a written waiver of notice, or the court, for cause shown, dispenses with the notice. Conn. Gen. Stat. Ann. secs. 45–163, 45–167 (West 1981).

We posed the question to be decided in *Spiegel* in the following words (12 T.C. at 527): "whether the check when paid should be considered as having constituted payment at the time it was delivered or at the time it was honored." We went on to say that—

We may assume that decedent's delivery of checks to the charities in question was at the time no more than a conditional payment of the charitable contribution for which the deduction is here sought. If the subsequent honoring of the checks by fulfilling the condition subsequent *related the payment back to the date of delivery*, the fact of the contribution and the time it was paid would become fixed.

Upon that point, an examination of the authorities renders it impossible to entertain the slightest doubt.

[Emphasis added.]

In *Spiegel*, we then proceeded to quote from a long series of cases from both Federal and State courts. With the exception of one early decision of the Board of Tax Appeals, *Estate of Dodge v. Commissioner*, 13 B.T.A. 201 (1928), it was concluded in every case that checks which were promptly presented and duly paid upon presentation constituted payments which related back to the time of the original delivery. In *Spiegel*, we also expressly overruled the result in *Estate of Dodge*.

In *Spiegel*, we concluded that charitable deductions were allowable in 1942 when the checks were delivered, rather than in 1943 when the checks were presented to the bank for payment. We reached this result notwithstanding the fact that the issuing taxpayer had died before one of the checks was presented. This holding was based upon our conclusion that under *commercial* law, and therefore under tax law, payment was made in 1942.

Unquestionably, the word "payment" appears in an income tax provision; i.e., section 23(o) of the 1939 Code and section 170(a)(1) of the 1954 Code, and "payment" does not appear in the relevant estate tax provisions; i.e., sections 2031 and 2033. But as petitioner points out on brief, the *fact* of payment is the same in either case. If the decedent had satisfied her charitable contributions with currency rather than with checks, all would agree that payment had been made upon delivery of the currency, that an income deduction was delivered, and that the currency, having been paid, was not includable in the gross estate. Since we held in *Spiegel* that a check delivered in

payment of a charitable contribution, if promptly presented for payment and duly honored, constitutes a payment upon delivery, there can be no logical argument that the checks in question were not paid before the decedent died and are therefore not includable in her gross estate.

What we said in *Spiegel* is entirely apt here, namely, that—

What must be viewed as the critical point is that in all of the cases we have considered the checks were promptly presented and were duly paid upon presentation, and that, according to the principles generally accepted and previously discussed, the payment which upon delivery of the check was conditional not only became absolute upon presentation, but related back to the time of the original delivery. And that is a concept that has nothing to do with consideration or the lack of it. [12 T.C. at 530–531.]

In deciding to allow a deduction on the decedent's last income tax return, we also stated (12 T.C. at 529):

It would seem to us unfortunate for the Tax Court to fail to recognize what has so frequently been suggested, that as a practical matter, in everyday personal and commercial usage, the transfer of funds by check is an accepted procedure. The parties almost without exception think and deal in terms of payment except in the unusual circumstance, not involved here, that the check is dishonored upon presentation, or that it was delivered in the first place subject to some condition or infirmity which intervenes between delivery and presentation.

We went on to state that "With knowledge of the prevalence of this practice, and of the necessity of treating tax questions *from a practical rather than a theoretical viewpoint*" (12 T.C. at 529; emphasis added), it would be astonishing to conclude that Congress did not intend that an income tax deduction should be allowed.

Adopting such an approach, we hold that the amount of the checks in question is not includable in the gross estate under sections 2031 and 2033. We do so on the basis that, upon prompt presentation and actual payment of the checks by the bank, the conditional payment which occurred when the checks were issued became "absolute and related back to the time when the checks were delivered" (*Estate of Spiegel v. Commissioner, supra* at 529), thereby eliminating the amount represented by the checks from the assets of the decedent at the time of her death. This net amount was reported by the bank to the executors as being the amount on deposit in

decedent's account on her date of death, and we think the bank was correct.

Respondent concedes the propriety of an income tax deduction in the year in which a check is unconditionally delivered, notwithstanding the fact that the issuer has died before the check is cashed, but argues that the income tax and the estate and gift tax are not to be construed in pari materia. In response to this argument petitioner points out, as we have already noted, that we are dealing with a question of fact, not a question of law. Petitioner states on brief that "If it is a fact that *payment* of a charitable contribution has been made for income tax purposes, it must also be a fact that *payment* has been made for estate tax purposes." (Emphasis in text.) We agree.

While we have decided this case on the basis of our agreement with petitioner's principal argument, we deem it appropriate to discuss briefly one of petitioner's alternative arguments, not only since both parties have briefed the question extensively but also in light of the opinion of the Second Circuit Court of Appeals (the court to which this case would be appealed) in *Rand v. United States*, 445 F.2d 1166 (2d Cir. 1971). Petitioner contends, alternatively, that the checks in question represent transfers from decedent to charitable organizations which qualify for a deduction under section 2055. Section 2055(a) generally provides for a deduction from the gross estate of the amount of all bequests, legacies, devises, or transfers by a decedent to qualified charitable organizations. There is no dispute that the charities are so qualified.

The relevant provisions of the regulations under section 2055 are as follows:

Sec. 20.2055–2 Transfers not exclusively for charitable purposes—

(b) *Transfers subject to a condition or a power.* (1) If, as of the date of a decedent's death, a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible. *If an estate or interest has passed to, or is vested in, charity at the time of a decedent's death and the estate or interest would be defeated by the subsequent performance of some act or the happening of some event, the possibility of occurrence of which appeared at the time of the decedent's death to be so remote as to be negligible, the deduction is allowable.* If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in

whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, the deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of the power. [Emphasis added.]

As noted, we have emphasized the relevant language in the regulation. Mr. Belcher testified that the executors never considered stopping payment on the checks in question, that there was never any discussion among the executors with regard to stopping payment, and that there was never any discussion among the executors with regard to suing to recover any of the amounts from the charitable beneficiaries. He also testified that he never discussed with any of the beneficiaries of the estate the issue of stopping payment on the checks, at least not until after the Internal Revenue Service had raised questions in connection with the payments. He also testified that he never discussed with the beneficiaries the idea of suing the charities to recover any of the amounts that were paid.

The precise amount passing to the charities was determinable by adding the face amounts of the checks, and we think the uncontroverted testimony of Mr. Belcher regarding the decedent's pattern over a number of years of making substantial donations to charity late in the year is sufficient to meet the test of the regulation that the likelihood that the charitable gifts would be defeated by some occurrence was, in the words of the regulation, "so remote as to be negligible." We are somewhat hesitant to categorically pursue this approach in the instant case, however, by reason of the decision of the Second Circuit Court of Appeals in *Rand v. United States, supra*, for reasons hereinafter stated, notwithstanding the fact that *Rand* presented a fact situation totally dissimilar to the one before us here. See *Golsen v. Commissioner*, 54 T.C. 742, 756–758 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

In *Rand*, the Internal Revenue Service denied a deduction for the present value of a charitable remainder of a trust on the ground that the interest was not presently ascertainable and hence nonseverable from the noncharitable interest. By will, the decedent bequeathed an interest in his seat on the New York Stock Exchange to an individual as trustee, also naming the individual as the sole income beneficiary and

giving him almost unlimited powers over the trust principal. The remainder was left to charity.

As described by the Second Circuit,

> The trust gave the "entire gross or net income" to the trustee income beneficiary. The trustee was given extremely broad powers to manage and reinvest the principal at his sole discretion in any type of investments, including the power to invest in partnership interests in any brokerage or other firm and in real property, "all without regard to any law concerning the investment of trust funds." The trustee was also given power to charge all operating and maintenance expenses against trust corpus. He was authorized to loan any part or the whole of the trust estate, as trustee, to anyone, including to himself as an individual, for any purpose whatsoever, upon any terms, in his sole discretion. In addition, the Will excused the trustee from the duty to render to any Court annual or other periodic accounts whether or not provided by law and directed that any allocation of expenses in relation to the settlement or approval of the accounts made by the trustee was to be binding upon all persons interested. [445 F.2d at 1167–1168.]

Based upon the foregoing facts, the Second Circuit applied the "so remote as to be negligible" test of section 20.2055–2(b) of the Estate Tax Regulations, by saying that "this exception applies only to contingencies that are subject to mathematical, actuarial computation, and here the taxpayer's position is supported only by factual evidence relating to the business reputation of the trustee and his longtime friendship with the decedent." 445 F.2d at 1170. Taken totally out of the factual context to which the foregoing words were intended to apply, the Second Circuit's words could be said to apply to this case.

We do not believe we are required to speculate, however, as to whether the Second Circuit would apply the result in *Rand* to this case, because as we have amply demonstrated, the application of the holding in *Spiegel* precludes us from even reaching the question of the applicability of section 2055. In other words, we need not and we therefore do not consider the significance of the "remote * * * negligible" test of section 20.2055–2 of the Estate Tax Regulations.

One final word. In *Spiegel*, we observed that "Charitable contributions may be gifts in the broad sense, but for tax purposes they fall into a special class and there is special legislation dealing with them. What we say here is intended to apply to charitable contributions and not necessarily to all categories of gifts." Similarly, we intend our holding in this

case to apply only to charitable contributions for estate tax purposes. Sufficient unto another day the question of includability of noncharitable gifts under similar circumstances.

*Decision will be entered under Rule 155.*

Reviewed by the Court.
DAWSON, SIMPSON, STERRETT, GOFFE, WILES, WILBUR, KÖRNER, SHIELDS, HAMBLEN, CLAPP, SWIFT, JACOBS, and GERBER, *JJ.*, agree with the majority opinion.
FAY, *J.*, concurs in the result only.
COHEN, *J.*, did not participate in the consideration of this case.

----

HAMBLEN, *J.*, concurring: In some instances, it is better to paint with a broad brush instead of a narrow one. Such an instance, it seems to me, is presented in this case. For example, Judge Learned Hand, writing for the court, used a broad brush in *Gregory v. Helvering*, 69 F.2d 809 (2d Cir. 1934), affd. 293 U.S. 465 (1935). In *Gregory*, the taxpayers literally complied with the statute, but the Court of Appeals applied a pragmatic approach to resolve the case,[1] and the "business purpose" doctrine was born. All brushes have two sides, and in the factual circumstances presented in this case, a pragmatic approach is the best avenue to resolution consistent with the intent of Congress.

The conclusion of the majority is a commonsense result which does no disservice to respondent. In certain instances in which the marital deduction is utilized,[2] the increase in the value of the estate resulting from the inclusion of such outstanding checks, as are involved here, would correlatively increase the marital deduction, while, simultaneously, the included amount of such checks, generally should be allowed as a deduction as a charitable gift.[3] Such a consequence would

----

[1] Revg. 27 B.T.A. 223 (1932).

[2] An unlimited marital deduction is available to estates of decedents dying after Dec. 31, 1981. Sec. 2056 as amended by the Economic Recovery Tax Act of 1981, Pub. L. 97–34, 95 Stat. 301. If the unlimited marital deduction is elected, the charitable gift deduction would be inconsequential.

[3] Sec. 20.2056(c)–1(b), Estate and Gift Tax Regs.; sec. 2055. See *Estate of Russell v. Commissioner,* 70 T.C. 40, 44 (1978), acquiesced 1979–1 C.B. 1.

create an unanticipated deduction for petitioner, unintended by respondent. "Nothing astonishes man so much as common sense and plain dealing."[4]

STERRETT and WILES, *JJ.*, agree with this concurring opinion.

---

CHABOT, *J.*, dissenting: Although I agree that it would be satisfying to decide this case for petitioner, I reluctantly conclude that the law is otherwise. Respectfully, I dissent.

## Regulation

The first sentence of section 20.2031–5, Estate Tax Regs., requires "cash belonging to the decedent at the date of his death, whether in his possession or in the possession of another, or deposited with a bank, [to be] included in the decedent's gross estate." The second sentence of this regulation provides an exception from this rule in the case of outstanding checks subsequently honored by the bank, but only if the checks are "given in discharge of bona fide legal obligations of the decedent incurred for an adequate and full consideration in money or money's worth".

The majority make this second sentence "the focal point of [their] inquiry in this case." (Majority opinion p. 230.) They justify this second sentence because, if the amount of outstanding checks to which the second sentence of the regulation applies were included in the gross estate, then the same amount "would also be deductible under section 2053(a)(3) as claims against the estate, thus creating a 'wash'." (Majority opinion p. 231.)

So far, so good. It is what the majority do next that creates the problem. The majority create a second exception to the general rule of the first sentence, an exception for checks "issued in good faith" (Majority opinion p. 232.) to charitable donees.

Firstly, if the majority mean what they say in note 9 of their opinion ("this case presents no occasion to in any way question the validity or even the reasonableness of the regulation"),

---

[4]R.W. Emerson, Essays, *Art*, in Bartlett's Familiar Quotations 497 (15th ed. 1980).

then they must acknowledge that the first sentence of the regulation requires inclusion of the amount of the checks in the gross estate, and the second sentence's exception does not apply to these checks.[1]

Secondly, the most the majority can say about checks to charitable donees is that "inclusion of these checks would at the very least *create the possibility* that they would qualify as section 2055 charitable deductions, again creating a wash." (Majority opinion p. 232; emphasis added.) But if the checks here involved would be deductible under section 2055, then petitioner would win its case and we would not have to struggle with the regulation. The second sentence of the regulation merely avoids extra work. The majority's additional exception actually changes the result, at least in the instant case.[2]

Thirdly, the majority write a second exception into the regulation (for checks "issued in good faith" to charitable donees) simply because they wish the regulation would have this second exception. We have authority to invalidate a regulation in whole or in part (e.g., *BBS Associates, Inc. v. Commissioner*, 74 T.C. 1118 (1980), affd. without opinion (3d Cir. 1981); *Matheson v. Commissioner*, 74 T.C. 836 (1980)), and to interpret regulations, even if contrary to respondent's interpretation (e.g., *Hunt v. Commissioner*, 80 T.C. 1126 (1983)). However, we do not have authority to rewrite a regulation simply because we think a different policy is better.

---

[1] The majority have found (Majority opinion p. 229.) "None of the checks were contracted for, nor were any made for, an adequate and full consideration in money or money's worth." The majority have concluded (Majority opinion p. 231.) "it seems indisputable that no pledges were intended and therefore that the checks in question were not given in discharge of bona fide legal obligations of the decedent". Accordingly, it is clear that the amount of the checks does not meet the requirements for exclusion from the gross estate under sec. 20.2031–5, Estate Tax Regs. (as promulgated by the Department of the Treasury); also this amount is not deductible under sec. 2053(a)(3) as a claim against the estate. See, e.g., *United States v. Stapf*, 375 U.S. 118, 130–131 (1963); *Estate of Theis v. Commissioner*, 81 T.C. 741, 745 (1983); *Estate of Greenberg v. Commissioner*, 76 T.C. 680, 683 (1981).

[2] In order to be allowed a deduction under sec. 2055, petitioner must show that, with respect to the facts as of the date of decedent's death, the possibility of the charities' not receiving and keeping the money represented by the checks is so remote as to be negligible. *Estate of Kunkel v. United States*, 689 F.2d 408, 414 (3d Cir. 1982); *Connecticut Bank & Trust Co. v. United States*, 439 F.2d 931, 935 (2d Cir. 1971); *Estate of Woodworth v. Commissioner*, 47 T.C. 193, 196–197 (1966); sec. 20.2055–2(b), Estate Tax Regs. See *Rand v. United States*, 445 F.2d 1166 (2d Cir. 1971), discussed in the majority's opinion (pp. 236-238 *supra*). Petitioner has failed to make the necessary showing.

E.g., *Fulman v. United States*, 434 U.S. 528, 536 (1978).[3]

*Estate of Spiegel*

The majority look to *Estate of Spiegel v. Commissioner*, 12 T.C. 524 (1949), as justification for their action in the instant case.

In *Estate of Spiegel*, this Court applied the statutory word "payment". The majority in *Estate of Spiegel* stressed the fact that the Congress had amended the law to insert that word, "payment". (12 T.C. at 531–532.) The majority in *Estate of Spiegel* pointed out that, in *Estate of Bradley v. Commissioner*, 19 B.T.A. 49 (1930), affd. 56 F.2d 728 (6th Cir. 1932), we had held that a taxpayer was entitled to a deduction for "Taxes paid * * * within the taxable year" in the year in which the taxpayer's check was delivered to the county tax official. (12 T.C. at 530.) The majority in *Estate of Spiegel* pointed out that, "both commercial usage and legal authority thereafter [i.e., after adoption of the Uniform Negotiable Instruments Law] considered a payment by check as at least 'conditional payment.'" (12 T.C. at 526.) The majority in *Estate of Spiegel* pointed to Federal court opinions of four Circuit Courts of Appeals, and opinions of State courts from North Carolina, New York, Minnesota, Utah, Pennsylvania, California, Texas, and Illinois indicating that in a variety of contexts, payment is treated as having been made at the time the payor's check is delivered. (12 T.C. at 527–529.)

Firstly, the statutory language in the instant case is different from what we faced in *Estate of Spiegel*; the question before us is not whether decedent made "payment" of contributions before her death but rather it is whether she still had an "interest" in the full amount in her checking account at the time of her death.

Secondly, *Estate of Spiegel* was an income tax itemized-deduction case in which we relied on *Estate of Bradley*, an earlier income tax itemized-deduction case interpreting the word "paid". In the instant case, the majority do not point to a

---

[3]"But, as we have indicated, the issue before us is *not* how *we* might resolve the statutory ambiguity in the first instance, but whether there is any reasonable basis for the resolution embodied in the Commissioner's Regulation." (Emphasis in original.) Since the majority agree that the regulation is valid and reasonable, we ought not modify the regulation to accord with our view of what might be even more reasonable.

single instance of an estate tax case (or a gift tax case or, for that matter, an income tax case)[4] dealing with when a person no longer has an "interest" in property.

Thirdly, the majority in the instant case do not point to "commercial usage" or "legal authority" or Federal courts or State courts holding, or even stating, that the writer of a check no longer has an interest in the funds represented by that check. Indeed, writers of checks are permitted to stop payment on checks they have written. Conn. Gen. Stat. Ann. sec. 42a–4–403(i) (West 1960). Not only that, but the general rule is that an estate is permitted to recover the proceeds of a check given by a person as a gift, but which was not cashed until after the person's death.[5]

Fourthly, as Judge Whitaker points out in his dissenting opinion, *infra*, even if the payments by the bank in January 1974 are treated as having depleted decedent's account in December 1973, petitioner would then be obligated to include in the gross estate the value of its right to recover the proceeds of the checks.

*Conclusion*

The majority have determined what result they wish to reach. In order to reach that result, (1) they ignore the language of the statute, (2) they rewrite a regulation (all the while protesting that the regulation is reasonable and valid), and (3) they draw comfort from a closely reasoned and well-supported case while ignoring that case's reasoning, and provide, in the instant case, absolutely nothing by way of support for their interpretation.

The majority have taken what appears to be a hard case and have succeeded in making bad law.

Since it does not appear that the amount of the checks, if includable in the gross estate, would be deductible under section 2055 or section 2053(a)(3), I cannot concur in the result and so must dissent.

PARKER, *J.*, agrees with this dissent.

---

[4] See *United States v. Davis*, 370 U.S. 65, 69 n. 6 (1962), regarding the hazards of applying estate and gift tax law concepts to the interpretation of the income tax laws.

[5] See note 4 in the dissenting opinion of Judge Whitaker, *infra*.

WHITAKER, *J.*, dissenting: In the resolution of Federal tax controversies involving income, estate, and gift taxes, there is always the potential for an interplay between Federal tax law and State law. The case at bar is an apt example, as the majority seems to realize and certainly cannot deny.[1] The composition of the estate is first a matter of State law, i.e., the decedent's ownership of assets. Inclusion or exclusion of those assets for Federal estate tax purposes is a Federal tax question.[2] In *Estate of Spiegel v. Commissioner*, 12 T.C. 524 (1949), we accepted well-established *State* law principles that until presentment and payment, a check is a conditional payment, only, but upon payment by the drawee bank, the check is deemed to have constituted payment as of the date of delivery of the check. We applied those principles to hold that a charitable donation by check was deemed paid upon the date of delivery of the check, provided the condition of honoring the check was met.

The majority in this case appears to view as the issue before us the determination of the amount of decedent's cash on deposit at the date of death. On the authority of our decision in *Estate of Spiegel*, the majority correctly concludes that upon the presentation and payment by the drawee bank of the 36 checks payable to various charities, the payments related back to the dates of the checks, all prior to the date of decedent's death. Somewhat simplistically, the majority then concludes that the amounts of the checks should be excluded from the gross estate under sections 2031(a) and 2033.

I agree with the majority that decedent's cash was depleted as of the date of death by the aggregate amount of these checks given by her to charities upon payment by the drawee bank.[3]

---

[1]See *Morgan v. Commissioner*, 309 U.S. 78, 80 (1940); *Benedict v. Commissioner*, 82 T.C. 573, 577 (1984).

[2]In *Benedict v. Commissioner*, 82 T.C. 573, 577 (1984), we quoted from *Morgan v. Commissioner*, *supra*, that:

"In *Morgan*, the Supreme Court articulated the rule that State law creates the legal interests and rights of the parties, and the Federal revenue acts designate what interests or rights, so created, are to be taxed."

[3]The majority correctly concludes that petitioner's right to stop payment on the checks was at best illusory. This is especially true under Connecticut law which expressly provides that the drawee bank may continue to honor checks for a period of 10 days after receiving knowledge of the customer's death. Conn. Gen. Stat. Ann. sec. 42a–4–405 (West 1960) provides:

Sec. 42a–4–405. Death or incompetence of customer

(1) * * * Neither death nor incompetence of a customer revokes such authority to accept, pay,

However, the majority chooses to ignore another facet of State law which directly affects the size of the gross estate. Although I have located no Connecticut case precisely in point, it is widely accepted that an estate has the power to recover the proceeds of a check reflecting a gift by a decedent where the check is not cashed until after the decedent's death.[4] I have found no Connecticut case or statute which tends to suggest that Connecticut law is to the contrary. This right of recovery clearly constitutes an asset of decedent's estate for purposes of section 2031(a), includable at its fair market value, unless, in some fashion, the asset was rendered worthless. Here, the executors took no affirmative action to enforce this right. Whether or not they were aware of its existence prior to trial is unclear. By statute, the State of Connecticut recognizes the power of a person, including the executor of an estate, to disclaim an interest or asset to which the estate otherwise would be entitled.[5] Under this statute, petitioner, acting through the executors, had a clear right to file a notice of disclaimer with the probate court, but there is nothing in the facts to indicate that this privilege was exercised.[6]

Petitioner has argued that the failure by the executors to exercise this right to require the charitable recipients of the

collect or account until the bank knows of the fact of death or of an adjudication of incompetence and has reasonable opportunity to act on it.

(2) Even with knowledge a bank may for ten days after the date of death pay or certify checks drawn on or prior to that date unless ordered to stop payment by a person claiming an interest in the account. * * *

[4]See Conn. Gen. Stat. Ann. sec. 42a–4–405, U.C.C. comment 3 (West 1960) that provides:

"This section does not prevent an executor or administrator from recovering the payment from the holder of the check. It is not intended to affect the validity of any gift causa mortis or other transfer in contemplation of death, but merely to relieve the bank of liability for the payment."

See, e.g., *Black v. Hart,* 301 So. 2d 787 (Fla. App. 1974); *Gilder v. First National Bank of Greenville,* 214 So. 2d 681 (Miss. 1968); *Bridewell v. Clay,* 185 S.W.2d 170 (Tex. App. 1944); *Weiss v. Fenwick,* 111 N.J. Eq. 385, 162 A. 6099 (1932); *Burrows v. Burrows,* 240 Mass. 485, 137 N.E. 923 (1922); Annot., 38 A.L.R. 2d 594 (1954).

[5]Conn. Gen. Stat. Ann. sec. 42a–45–300(b) provides in part that an executor, if he deems it in the best interests of the beneficiaries and the estate, may with the approval of the probate court, file a disclaimer on behalf of the estate within the time and in the manner prescribed. Under sec. 42a–45–302 (as then in effect), the disclaimer shall relate back for all purposes to the decedent's date of death.

[6]I presume that no disclaimer was filed. The majority complains that the executor could disclaim "only with the approval of all of the beneficiaries of the estate." Whether this is a requirement of Connecticut law is unstated, but we note, in any event, that the residuary beneficiaries were decedent's grandchildren, whose parents were among the coexecutors. I further invite the attention of the majority to the fact that it is not this Court which would be imposing on the executors the burden of a disclaimer; rather it is the law of the State of Connecticut which we (the majority included) are bound to apply.

checks to reimburse the estate would create some kind of an estoppel, precluding the executors from doing so after the filing of the Federal estate tax return. I have searched without success under the laws of Connecticut as well as the common law for some support for the proposition that failure to pursue this right of reimbursement prior to the filing of the Federal estate tax return would create estoppel or waiver or constitute a common law disclaimer. Such a proposition would allow us either to conclude that the asset was valueless, or perhaps that, for purposes of section 2055, payment of the checks was a transfer to charity subject to a condition or power, the occurrence or exercise of which was so remote as to be negligible within the meaning of sec. 20.2055–2(b), Estate Tax Reg. Unfortunately, in the absence of a disclaimer or a basis for waiver or estoppel, this estate includes as an asset the right to require the charities to return the amounts of the checks. That asset must be valued and accounted for as part of the gross estate.

The majority's strongest argument for its "practical result" is the Supreme Court's admonishment in *Commissioner v. Duberstein*, 363 U.S. 278, 287 (1960), as well as our own comments in *Spiegel*, but a "practical result" cannot be manufactured out of thin air. We do not have here as we had in *Spiegel* a basis under State law upon which to work. Without State law support, the majority has simply embarked upon a legislative gambol. That the result is eminently practical does not support the majority's opinion.